**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:

DARREN M. BREWER,

        **Debtor.**

_____/

CASE NO.:  **6:11-bk-04174-KSJ**
**CHAPTER 11**

## BRIEF IN OPPOSITION TO MOTION TO DISMISS INVOLUNTARY BANKRUPTCY

COMES NOW, Insight Technology, Inc. ("**ITI**") and files its brief in opposition to

Debtor's Motion to Dismiss Involuntary Bankruptcy (the "**Motion**").  In the Motion Debtor

Darren M. Brewer ("**Debtor**") argues that the instant proceeding must be dismissed on

the following grounds: (1) ITI's claim is subject to a bona fide dispute; (2) Debtor has

rights of setoff against the judgment which is the basis for ITI's claim; (3) ITI has

instituted this action in bad faith; and (4) there are no special circumstances which

justify the Bankruptcy Court intervening in a two-party dispute between ITI and Debtor.[1]

For the reasons set forth below, ITI respectfully requests that the Court deny the Motion.

### I. Factual Background

On March 17, 2004, ITI sued Debtor, among others, in Civil Case No. 04-

A02940-9 in the Superior Court of Gwinnett County, Georgia (the "**ITI Litigation**"). In a

nutshell, ITI alleged that Debtor, ITI's former President, breached his fiduciary duties,

---

[1]  Debtor also argues in the Motion that the involuntary proceeding should be dismissed because the petition was not properly executed. **Motion, pg. 1-2.**  On April 29, 2011, ITI filed an amendment to the Involuntary Petition [Docket No. 12] to clarify that Mr. Gary Aliengena signed the petition in his capacity as President of Insight Technology, Inc., to clarify the nature of ITI's claim, and to amend the amount of ITI's claim. Accordingly, ITI respectfully submits that Debtor's argument in this regard is moot.

-1-

conspired with and was aided and abetted by his co-defendants in the misappropriation of corporate opportunities belonging to ITI for the purpose of stealing ITI's business, and in the process, coerced, threatened, and intimidated its employees into silence.  Prior to trial, ITI settled its claims against Debtor's co-defendants for an amount of $1.7 million.  At trial, the jury awarded a substantial verdict against Debtor and in favor of ITI.  On July 18, 2008, the Superior Court of Gwinnett County entered a final judgment in favor of ITI and against Debtor in the amount of $1.4 million ($395,000 for compensatory damages, $650,000 for punitive damages, and $355,000 for attorney's fees) (the "**Judgment**").  By order entered contemporaneously with the Judgment, the Superior Court of Gwinnett County ruled that ITI's $1.7 million settlement with Debtor's co-Defendants under Georgia law should be credited against the compensatory damages award but not the punitive damages or attorney's fees awarded.[2]

Subsequent to the entry of the Judgment, ITI commenced postjudgment collection efforts.  ITI instituted proceedings to garnish Debtor's bank account at Wachovia[3] and to garnish Debtor's wages from Carrier411 Services, Inc. ("**Carrier411**"), [4] an internet based safety service for the trucking industry conceived by Debtor.  At all

---

[2]  After crediting the $1.7 million settlement against the compensatory damages portion of the Judgment, the net amount of the Judgment is $1,005,000.00.  See, Brewer v. Insight Technology, Inc., 301 Ga. App. 694, 689 S.E.2d 330 (2009), *cert. denied* (May 17, 2010).

[3]  Civil Action File No. 10GR055813CX, State Court of Fulton County, Georgia, styled Insight Technology, Inc. v. Darren Brewer v. Wachovia Bank, Garnishee, filed on July 15, 2010.

[4]  Garnishment Case No. 10GC-11680-5, State Court of Gwinnett County, Georgia, styled Insight Technology, Inc. v. Darren Brewer v. Carrier411 Services, Inc., Garnishee, filed on September 1, 2010.

4821-6976-6153.1
45296/0001

times pertinent, Carrier411 was comprised of three (3) employees: Debtor as President and two (2) persons he hired. During the two year period from 2008-2009, Debtor took a salary of almost half a million dollars and continued as a W-2 employee up to the day the garnishment summons was served in September 2010. After the garnishment summons was served, Debtor abruptly discontinued taking salary from Carrier411, and on January 18, 2011, Debtor transferred $663,000 of Carrier411's retained earnings to Applied Bank, a Florida Bank.

ITI's collection efforts also included the levy and judicial sale of 300 shares of ITI stock owned by Debtor (the "**Stock**") pursuant to Chapter 13 of Title 9 of the Official Code of Georgia.[5] Pursuant to O.C.G.A. §§ 9-13-140 and 9-13-141,[6] notice of the judicial sale was published for four weeks in the Gwinnett Daily Post, the legal organ for

---

[5] As discussed in section "A" below, Debtor has repeatedly changed his testimony regarding ownership of the Stock, depending on whether ownership of the Stock allows him to claim any advantage at that particular time.

[6] O.C.G.A. § 9-13-140 provides, in relevant part, as follows:

> **Sales, how advertised**
>
> (a) The sheriff, coroner, or other officer shall publish weekly for four weeks in the legal organ for the county . . . notice of all sales of land and other property executed by the officer. In the advertisement the officer shall give a full and complete description of the property to be sold, making known the names of the plaintiff, the defendant, and any person who may be in the possession of the property . . .

O.C.G.A. § 9-13-141 allows for the publishing of such notices and legal advertisements once a week for four weeks immediately preceding the day of the sale.

4821-6976-6153.1
45296/0001

Gwinnett County, Georgia.[7]  In accordance with the requirements of O.C.G.A. § 9-13-140, the legal advertisement by Sheriff R.L. "Butch" Conway of Gwinnett County, Georgia gave a full and complete description of the Stock, identified ITI and Debtor, and gave notice of the date, time, and place of the sale of the Stock.  In accordance with O.C.G.A. §§ 9-13-160 and 9-13-161, on Tuesday, February 1, 2011 between the hours of 10:00 a.m. and 4:00 p.m., the Gwinnett County Sheriff's Department conducted a public sale of the Stock on the courthouse steps of the Gwinnett County Courthouse in Lawrenceville, Georgia.[8]  ITI was the only bidder at the public sale of the Stock, and by Bill of Sale made by the Sheriff's Department on February 24, 2011, conveyed the Stock to ITI for the sum of $500.00.  After payment of fees for Sheriff's Commission ($31.00), Sheriff's Levy ($50.00), and advertising ($120.00), the net proceeds from the judicial sale of the Stock totaled $299.00.[9]

## II. Argument and Citation of Authority

### A.    Ownership of the Stock

Before directly addressing the arguments in Debtor's Motion, as an initial matter, the Court should be made aware of Debtor's previous inconsistent testimony regarding

---

[7]  According to the Publisher's Affidavit, notice of the judicial sale of the Stock was advertised in the legal organ on January 6, 2011; January 13, 2011; January 20, 2011; and January 27, 2011.  A true and correct copy of the Publisher's Affidavit, which includes a copy of the legal advertisement, is attached hereto as **Exhibit "A"**.

[8]  O.C.G.A. § 9-13-160 requires that public sales in the State of Georgia be conducted between the hours of 10:00 a.m. and 4:00 p.m.  O.C.G.A. § 9-13-161 requires sales of property under execution to be conducted by the sheriffs at the county courthouse where the levy was made on the first Tuesday of the month at public outcry.

[9]  A true and correct copy of the fi. fa. reflecting the judicial sale of the Stock by the Gwinnett County, Georgia Sheriff is attached hereto as **Exhibit "B"**.

ownership of the Stock.  It appears that the ownership of the Stock is something that changes depending on whether it gives Debtor an advantage at a particular moment to claim it.  In October 2010, Debtor filed suit against ITI in the Fourth Judicial District Court in and for Wasatch County, State of Utah, Civil No. 100500492, styled <u>Darren Brewer v. Insight Technology, Inc.</u> (the "**Utah Litigation**") to compel the inspection of ITI's corporate records on grounds that ***he was the owner of the Stock*** and had been the owner since June 2000.  **Utah Litigation Complaint and Application for Inspection of Corporate Records on Expedited Basis, ¶ 5, 15.**[10]  Attached to the Complaint in the Utah Litigation was an August 2010 affidavit from Debtor in which he states, ***under oath***, that ***he owns the Stock***.[11]

Yet, after ITI filed a Notice of Levy in December 2010 in connection with the judicial sale of the Stock, Debtor initiated an action in January of this year in the Superior Court of Gwinnett County, Civil Action File No. 11-A-00375-9, styled <u>Darren Brewer v. Insight Technology, Inc.</u>, seeking to enjoin the judicial sale (the "**Injunction Action**") on grounds that ***he did not own the Stock***.  In the ***Verified*** Complaint for Temporary and Permanent Injunctive Relief and Declaratory Judgment filed in the Injunction Action, Debtor alleged that the sale of the Stock was improper because "***[Debtor] no longer owns the [Stock]*** as [it was] previously transferred to another

---

[10]   A true and correct copy of the Utah Litigation Complaint and Application for Inspection of Corporate Records on Expedited Basis is attached hereto as **Exhibit "C"**.

[11]   See Exhibit "A" to the Utah Litigation Complaint and Application for Inspection of Corporate Records on Expedited Basis is attached hereto as **Exhibit "C"**.

4821-6976-6153.1
45296/0001

party." **Injunction Action Verified Complaint, ¶ 13.**[12]  Debtor further explained in his brief in support of his motion for injunctive relief that he had transferred the Stock to Concentric Technologies, LLC (sic) long before ITI had sought to levy and sell the Stock.  **Injunction Action Brief in Support of Motion for Temporary and Permanent Injunctive Relief and Declaratory Judgment, pg. 2-3, 8.**[13]  In support of his claim, Debtor produced a copy of an Assignment and Bill of Sale dated ***July 28, 2005*** purporting to transfer the Stock to Concentrik Technologies, LLC ("**Concentrik**").[14]

At the hearing on Debtor's motion for injunctive relief in the Injunction Action, Debtor testified under oath, in open court, as follows:

> Q.  Do you know, --are you testifying under oath that you signed this notice of stock sale document and this assignment and bill of sale in—on July 28, 2005 for the assignment and bill of sale and August 3 of 2005 for the notice of stock sale?
>
> A.  What was the last.  August?
>
> The Court: the date is contained in the document.
>
> The Witness: Yes sir.
>
> Q.  That's the date that you signed those two documents?
>
> A.  Yes.
>
> Q.  And that's the date that you are here, under oath, testifying that you sold or transferred the stock in Insight Technology to Concentrik Technologies; is that correct?

---

[12]  A true and correct copy of the Injunction Action Verified Complaint is attached hereto as **Exhibit "D"**.

[13]  A true and correct copy of the Injunction Action Supporting Brief is attached hereto as **Exhibit "E"**.

[14]  A true and correct copy of the Assignment and Bill of Sale is attached hereto as **Exhibit "F"**.

A. Yes. (TR 19-20).[15]

Based upon Debtor's testimony, the Court entered an Order on January 28, 2011 in which it found that Debtor "according to his sworn testimony before this Court, has failed to establish standing to initiate or prosecute this action, irreparable harm or that he is without an adequate remedy of law."[16]  The lack of standing to oppose the sheriff's sale was based upon his sworn testimony that he did not own the Stock.

The ink was not even dry on the transcript from that Georgia hearing when Debtor, on February 22, 2011, filed a motion to satisfy the Judgment in Florida in which he again ***claimed ownership of the Stock***.  Debtor argued that the value of the Stock was at least $1.4 million, which was in excess of the amount of the Judgment, and that he was entitled to a credit against the Judgment.  **See**, **Motion to Satisfy Judgment in Whole or in Part, ¶ 5, 11.**[17]

Debtor's inconsistent (at best) and perjured (at worst) testimony speaks for itself. The Stock belongs to him when it suits him to claim so.

---

[15]   A true and correct copy of the relevant portion of the transcript of the hearing on Debtor's motion for injunctive relief in the Injunction Action is attached hereto as **Exhibit "G"**.

[16]   A true and correct copy of the Court's January 28, 2011 order in the Injunction Litigation is attached hereto as **Exhibit "H"**.

[17]   A true and correct copy of the Motion to Satisfy Judgment in Whole or in Part filed in Case No. 10-CA-005146, Circuit Court in and for Seminole County, Florida, styled Insight Technology, Inc. v. Darren Brewer, is attached hereto as **Exhibit "I"**.

4821-6976-6153.1
45296/0001

**B.      Petitioner's claim is not subject to a bona fide dispute.**

The standard for determining whether a debt is the subject of a bona fide dispute is "whether there is a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to disputed facts." In re Rosenberg, 414 B.R. 836, 845 (Bankr. S.D. Fla. 2009). "Under this standard, the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt." In re Ransome Group Investors I, LLLP, 424 B.R. 547, 551-52 (Bankr. M.D. Fla. 2009) (internal citation omitted).

Generally, where a petitioning creditor's claim is based upon an unstayed judgment, even if an appeal of the judgment is pending, the debt is not the subject of a bona fide dispute within the meaning of 11 U.S.C. § 303(b). See, Ransome Group Investors I, LLLP, supra; In re Knight, 380 B.R. 67 (Bankr. M.D. Fla. 2007); In re Atlantic Portfolio Analytics & Management, Inc., 380 B.R. 266 (Bankr. M.D. Fla. 2007); In Re Smith, 123 B.R. 423 (Bankr. M.D. Fla. 1990). "It would be contrary to the basic principles respecting, and would effect a radical alteration of, the long standing enforceability of unstayed final judgments for a bankruptcy court to find such judgment, until reversed, subject to a bona fide dispute." Atlantic Portfolio, 380 B.R. at 273 (internal citation omitted). In the instant case, the Judgment has not been stayed and is not the subject of a pending appeal.

In the Motion, Debtor argues that Petitioner's claim is subject to a bona fide dispute because it has not been credited for the fair market value of the Stock, which Debtor believes is worth an amount in excess of the Judgment. **Motion, pg. 3-4.** However, the Judgment has been reduced by the net proceeds of $299.00 obtained at

-8-

the legally valid sheriff's sale.  Debtor's arguments are a collateral attack on the judicial sale of the Stock.  This is no different than a debtor seeking to relitigate the amount of a deficiency judgment he is liable for following a judicial foreclosure sale of real property. It is well established that a bankruptcy court has no subject matter jurisdiction to set aside such determinations made by state courts – a bankruptcy court cannot simply substitute its judgment for that of a state court in such matters.  See, e.g., In re New Century TRS Holdings, Inc., 423 B.R. 467 (Bankr. D. Del. 2010) (claims mortgage lender, state court, and sheriff who conducted judicial sale of mortgaged property were inextricably intertwined with issues adjudicated by state court in mortgage foreclosure proceeding, and since granting relief requested would negate state court's judgments, Rooker-Feldman doctrine applied to bar bankruptcy court's subject matter jurisdiction over claims).  This principle is equally applicable to the judicial sale of personal property, particularly where there is no dispute that the judicial sale was properly advertised and conducted according to applicable statutes, and there are no irregularities in the manner, place, and/or time of the judicial sale.  See, e.g., In re Porovne, 436 B.R. 791 (Bankr. W.D. Penn. 2010) (*Rooker-Feldman* doctrine precludes "inferior" federal courts from sitting as appellate courts in review of state court judgments, and a federal court may not set aside a judicial sale that was conducted pursuant to the judgment of a state court).  Debtor's sole remedy to contest the proceeds obtained at the judicial sale of the Stock is to move to set aside the sale ***in a Georgia court***.  See, O.C.G.A. 9-13-172.[18]  Accordingly, dismissal of this proceeding

---

[18]  O.C.G.A. § 9-13-172 provides "Courts shall have full power over their officers making execution sales. Whenever the court is satisfied that a sale made under process is

4821-6976-6153.1
45296/0001

on grounds that the judicial sale of the Stock was for less than what Debtor believes to be the value of the Stock is not proper.

**C.      Alleged setoff claims in favor of Debtor do not require dismissal of the involuntary proceeding.**

Debtor next argues that this involuntary proceeding should be dismissed pending resolution of setoff claims he asserts against ITI's Judgment.  **Motion, pg. 4-5.**  In particular, Debtor claims that he is owed money as a shareholder of ITI for distributions that should have been made to him since 2004.  **Id.**  Debtor's assertion of this alleged counterclaim is merely an improper attempt to relitigate claims which have already been adjudicated in the ITI Litigation and which are now barred by the doctrine of res judicata. Debtor's shareholder counterclaim against ITI was litigated and disposed of in the January 2007 trial in the ITI Litigation.  After hearing argument from counsel, the court directed a verdict on the counterclaim in favor of ITI.[19]  Thus, at least through the date of the January 2007 trial in the ITI Litigation, Debtor's purported shareholder counterclaim has been adjudicated, and Debtor is barred from asserting it in this proceeding by the doctrine of res judicata.[20]

---

infected with fraud, irregularity, or error to the injury of either party, the court shall set aside the sale."

[19]   A true and correct copy of the portion of the trial transcript from the ITI Litigation setting forth the court's ruling on Debtor's shareholder counterclaim is attached hereto as **Exhibit "J"**.

[20]   Given Debtor's sworn testimony given in January 2011 that he sold the Stock to Concentrik in July 2005, Debtor, by his own later admission, lacked standing to assert the shareholder counterclaim at the trial in the ITI Litigation in January 2007.  ITI was not aware of the standing issue at the time of the trial, since Debtor failed to disclose the July 2005 sale of the Stock until he sought to enjoin the judicial sale of the Stock in January 2011.

-10-

As to any counterclaim for unpaid dividends which allegedly accrued after the January 2007 trial in the ITI Litigation, such a claim does not and cannot constitute a setoff against a valid final judgment.   A final judgment and a mere disputed and unliquidated claim are not mutual obligations to which the doctrine of setoff would apply. Moreover, given Debtor's **_sworn testimony_** in the Injunction Action that he sold the Stock to Concentrik in July 2005, even if there existed a valid claim for shareholder distributions from January 2007 to the present, Debtor, by his own sworn testimony, has no standing to assert such claims because **_he claims no ownership interest in the Stock_**.

In any event, even if Debtor had standing to assert a shareholder claim against ITI, the assertion of any such setoff claim (the validity of which ITI disputes) would not be a ground for dismissal of the involuntary proceeding.   "Generally, the debtor's assertion of a counterclaim, even if of substance, does not render the petitioner's claim the subject of a bona fide dispute."   See, e.g., General Trading, Inc. v. Yale Materials Handling Corp., 119 F.3d 1485 (11th Cir. 1997); In re Manhattan Industries, Inc., 224 B.R. 195 (Bankr. M.D. Fla. 1997).   Debtor's alleged counterclaim does not dispute the merits of ITI's Judgment and does not disqualify ITI from filing this action as a petitioning creditor.

**D.    Debtor has failed to carry his burden of showing that the involuntary petition was filed in bad faith.**

Debtor next argues that ITI has filed the involuntary petition in bad faith.   As an initial matter, a petitioning creditor's good faith is generally presumed, and the debtor bears the burden of proving bad faith.   See, e.g., In re Manhattan Industries, Inc., supra;

-11-

In re CLE Corp., 59 B.R. 579 (Bankr. N.D. Ga. 1986).  Debtor has failed to carry his burden.

Debtor claims that because he has identified numerous assets in his responses to ITI's postjudgment discovery which ITI has not sought to execute its Judgment against, the Court must conclude that ITI has filed the involuntary petition in bad faith in order to use the Bankruptcy Court as a substitute for its state court collection remedies. **Motion, pg. 6-7.**  On the contrary, ITI has sought to enforce its Judgment against many of Debtor's assets – Debtor's Georgia and Florida bank accounts, as well as his wages from Carrier411 Services, Inc.  The only other assets of value which Debtor identified in response to ITI's postjudgment discovery were his interests in Extranet Commerce, LLC (which owned a one-half interest in FreightCheck, LLC) and Concentrik, and his Florida residence.  **See, Defendant's Answers to Plaintiff's First Set of Post-Judgment Interrogatories, Response to Interrogatory No. 6.**[21]  Debtor conveniently fails to mention the deliberate and calculated efforts he and his attorneys have taken to insulate these assets from collection with the specific intent to prevent ITI from satisfying its Judgment.

Specifically, on September 20, 2007, after the jury in the ITI Litigation had entered a substantial verdict against him, Debtor fraudulently transferred his Georgia residence by quitclaim deed to a trust created by him, for no consideration, for purposes of stalling and frustrating ITI's ability to collect its eventual judgment against him.  ITI subsequently initiated an action in the Superior Court of Gwinnett County, Georgia, Civil Action File No. 10A-05569-9, styled Insight Technology, Inc. v. Darren Brewer and

---

[21]  A copy of Debtor's responses to ITI's postjudgment interrogatories is attached hereto as **Exhibit "K"**.

Case 6:11-bk-04174-KSJ    Doc 19    Filed 05/16/11    Page 13 of 88

Michael W. Dawson (or Successors Thereto), Trustee U/A/ Darren Brewer Dated 9/11/2007 (the "**Fraudulent Transfer Litigation**") to avoid this transfer.

Subsequently, in December 2009, Debtor liquidated his interest in FreightCheck, LLC and used the proceeds to purchase a new home in the State of Florida in January 2010. **Motion, ¶ 10.** Debtor chose to purchase a home in Florida for the sole purpose of placing assets outside of the reach of ITI's Judgment. Debtor's position is that Florida's exemptions laws allow him to fully exempt his homestead from collection efforts, and the bankruptcy case was filed in bad faith because Debtor's homestead would only be partially exempt as a result of the application of Georgia's exemption statute.

Debtor also identifies in the Motion his membership interest in Concentrik as a potential asset subject to collection with substantial fair market value. Debtor formed Concentrik as a limited liability company formed under the jurisdiction of the island of Nevis. Debtor chose Nevis as the jurisdiction to establish Concentrik specifically to insulate it from the reach of ITI's Judgment. Debtor's attorney, Mr. Alper, specializes in asset protection and boasts the following on his firm's website:

> Establishing an LLC entity in an offshore jurisdiction gives another layer of asset protection. The Island of Nevis, in particular, has enacted favorable LLC laws. Most important, Nevis, like Florida, permits a single-member limited liability company, and Nevis law also establishes a charging lien as a creditor's exclusive remedy to attack a debtor's LLC ownership interest. A transfer of assets by a U.S. citizen to an offshore single-member LLC does not have any adverse tax consequences otherwise associated with transfer of assets to other offshore entities. To attack a Nevis LLC interest, the creditor has to apply in a Nevis court for issuance of the charging lien. It is unclear whether a Nevis court would even recognize a Florida judgment giving rise to a creditor's request for a charging order. ***Officials in Nevis***

-13-

45296/0001

> ***have told me they know of no instance where a U.S.
> creditor has obtained a charging lien in Nevis to enforce
> a U.S. judgment***.

<u>See</u>, "Offset Asset Protection – Nevis LLCs", <u>http://www.alperlaw.com/nevis_llc.html</u>

(emphasis added).  It is clear that Debtor's assets have been placed in Nevis solely to

put them beyond the jurisdiction of U.S. courts and for the sole purpose of frustrating

ITI's ability to collect the Judgment.  It is pure speculation on Debtor's part that ITI could

succeed in reaching Debtor's assets in Nevis (and it would require extraordinary efforts

by ITI to do so, if the bragging on Mr. Alper's website is to be believed).

Given the willful and calculated efforts Debtor has made to frustrate ITI's

collection of the Judgment, Debtor's argument that it is ITI who is acting in bad faith is

incredulous.   Clearly, Debtor, with the assistance of counsel, has educated himself and

taken specific and deliberate steps through a series of fraudulent conveyances to place

his assets outside of the reach of ITI's Judgment.  An involuntary petition is ITI's only

realistic remedy to counter the effect of the fraudulent transfers Debtor has made to

hinder and obstruct the collection of the Judgment.  It would be a miscarriage of justice

to preclude ITI from seeking relief from a bankruptcy court in the form of an involuntary

petition where Debtor has taken measures to place his assets outside of the reach of

ITI's Judgment, after the Judgment was entered, leaving ITI with no adequate collection

remedies at state law.  Such a precedent would allow judgment debtors to make any

judgment uncollectible, and the Court ought not allow such an inherently unfair result.

Moreover, for the Court to find bad faith under these facts would add insult to injury.

Debtor has intentionally depleted substantial assets and has titled his other assets in

such a manner that, outside of bankruptcy, collection is extremely difficult, if not

-14-

impossible.   Under such circumstances, "bankruptcy policy dictates that a creditor be able to compel liquidation or reorganization of the Debtor's estate through an involuntary petition."  Manhattan Industries, supra at 200.

**E.     Special circumstances authorize the filing of an involuntary proceeding in this matter.**

Debtor  further  argues  that  no  special  circumstances  exist  to  justify  the Bankruptcy Court to intervene in what Debtor characterizes as a mere two-party dispute.  **Motion, pg. 7-8.**   However, single creditor involuntary petitions are inherently appropriate "to ***prevent fraud, trick, artifice, or scam or if the creditor lacks adequate state court remedies***."   In re Atlantic Portfolio Analytics and Management, Inc., 380 B.R. 266, 274 (Bankr, M.D. Fla. 2007) (emphasis added).   As discussed above, Debtor has taken deliberate and calculated steps to fraudulently transfer assets and to make the Judgment difficult, if not impossible, to collect.  In particular, Debtor's liquidation of his interest in FreightCheck to obtain cash, which he used to purchase a home in the State of Florida (which Debtor asserts is fully exempt from collection under Florida law), exemplifies Debtor's extraordinary efforts to frustrate ITI's efforts to collect the Judgment.    Under the circumstances, this involuntary proceeding is ITI's only realistic remedy to enforce the Judgment.  ITI respectfully submits that dismissal of this involuntary proceeding would be inherently unfair and would set an undesirable precedent, eliminating single creditor involuntary petitions where judgment debtors liquidate assets and move to Florida (where their assets could be fully insulated), leaving judgment creditors without effective collection remedies.

-15-

## III. Conclusion

For the foregoing reasons, ITI respectfully requests that the Court deny the Motion.

**LAMBERTH, CIFELLI, STOKES, ELLIS & NASON, P.A.**
Attorneys for Insight Technology, Inc.
3343 Peachtree Road, N.E., Suite 550
Atlanta, Georgia  30326
Telephone:   (404) 262-7373


By:_____ */s/ Gregory D. Ellis*_____
         Gregory D. Ellis, Esquire
         Georgia Bar No. 245310
         Admitted *Pro Hac Vice*

**BROAD AND CASSEL**
Attorneys for Insight Technology, Inc.
390 North Orange Avenue, Suite 1400
Orlando, Florida  32801
Telephone:   (407) 839-4200
Facsimile:    (407) 425-8377


By:_____ */s/ Nicolette C. Vilmos*_____
         Roy S. Kobert, P.A.
         Florida Bar No. 0777153
         rkobert@broadandcassel.com
         Nicolette C. Vilmos, P.L.
         Florida Bar No. 0469051
         nvilmos@broadandcassel.com

-16-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 16th, 2011, I served a true and correct copy of the foregoing **BRIEF IN OPPOSITION TO MOTION TO DISMISS INVOLUNTARY BANKRUPTCY** by CM/ECF Service or United States first-class mail, in properly addressed envelopes with adequate postage thereon to:

Darren M. Brewer
4025 Bermuda Grove Place
Longwood, FL  32779

Jonathan B. Alper, Esq.
274 Kipling Court
Heathrow, FL 32746

Lawrence M. Kosto, Esq.
619 E. Washington Street
Orlando, FL 32801

By:_____ */s/ Nicolette C. Vilmos*_____
       Roy S. Kobert, P.A.
       Florida Bar No. 0777153
       rkobert@broadandcassel.com
       Nicolette C. Vilmos, P.L.
       Florida Bar No. 0469051
       nvilmos@broadandcassel.com

4821-6976-6153.1
45296/0001

# 𝕲𝖜𝖎𝖓𝖓𝖊𝖙𝖙 𝕯𝖆𝖎𝖑𝖞 𝕻𝖔𝖘𝖙

"Local News For Local People"

P. O. Box 603
Lawrenceville, Georgia 30046

Phone (770) 963-9205
Fax (770) 339-8082

## PUBLISHER'S AFFIDAVIT

STATE OF GEORGIA
COUNTY OF GWINNETT
    Personally appeared before the undersigned, a notary public within and for said county and state, J. K. Murphy, Publisher of the 𝕲𝖜𝖎𝖓𝖓𝖊𝖙𝖙 𝕯𝖆𝖎𝖑𝖞 𝕻𝖔𝖘𝖙, published at Lawrenceville, County of Gwinnett, State of Georgia, and being the official organ for the publication of legal advertisements for said county, who being duly sworn, states on oath that the report of

931-07612541

a true copy of which is hereto attached, was published in said newspaper on the following date (s):

1/6, 13, 20, 27, 2011

J. K. MURPHY, PUBLISHER

By: Todd Cline
Editor

Sworn to and subscribed before me this 25 day
of ___FEBRUARY___, 2011.

Valerie Hardeman
Notary Public
    My commission expires March 6, 2014

SHERIFF'S SALE
STATE OF GEORGIA
GWINNETT COUNTY
INSIGHT TECHNOLOGY, INC.
-VS-
DARREN BREWER
State Court of Gwinnett County, Civil Action No. 04-A02540-9
There will be sold at public outcry to the highest and best bidder for cash of certified funds during the legal hours of sale on the first Tuesday of February, 2011, that being February 1, 2011, from the steps of the Gwinnett County Justice and Administration Center (GJAC) the following property, to wit:
300 shares of common stock issued in the name of the judgment debtor, Darren Brewer, in a privately held Delaware corporation, Insight Technology, Inc.
The stock certificate may be viewed starting at 10:00 a.m. on the day of the sale. Purchaser shall be allowed one hour, if necessary, to obtain cash or an official bank check payable to the Sheriff of Gwinnett County and returned to the sale location to pay for the shares of stock. All sales are final. The statutory sheriff's sale commission will be added to the purchase price and paid by the Purchaser.
This is a "buyer beware" sale and the shares of stock are sold "as is" with no warranties, express or implied, as to the value or legal effect of the purchase of a minority interest in the judgment creditor, Insight Technology, Inc. The sale will be subject to confirmation that the sale is not prohibited under the United States Bankruptcy Code.
R. L. "Butch" Conway
Sheriff
Gwinnett County, Georgia
931-07612541,1/6,13,20,27

EXHIBIT
"A"

# WRIT OF FIERI FACIAS
## IN THE SUPERIOR COURT OF GWINNETT COUNTY   GED

BK03244 PG0195

BK03093PG0281

CIVIL ACTION NUMBER:  04-A-02940-9
JUDGMENT DATE:  JULY 18, 2008

INSIGHT TECHNOLOGY, INC.

Plaintiff(s)

VS.

DARREN BREWER

Plaintiff's Attorney - Name, Address & Telephone
Name:   BRUCE E. MITCHELL
Address: 3390 PEACHTREE ROAD, NE
          SUITE 250
          ATLANTA, GA 30326

Telephone & Area Code:404-262-9488

Defendant(s)

To all and singular the sheriffs of the State and their  lawful deputies:

In the above styled case, and on the judgment date set out, the plaintiff(s) named above recovered against the defendant(s) named above, judgment in the following sums:

| | | |
|---|---|---|
| Principal | $ | 1,045,000.00 |
| Interest | $ | 0.00 |
| Interest-Other | $ | 0.00 |
| Attorney's Fees | $ | 355,000.00 |
| Court Costs | $ | 0.00 |
| Total | $ | 1,400,000.00 |

**CANCELLATION**

The within and foregoing Fi. Fa. having been paid in full the clerk of Superior Court is hereby directed to cancel it

of record this_____day of_____, 20____

Signature:_____

Title:_____

NOTE:

with future interest upon said principal amount from  the date of judgment at the legal rate.

Therefore, YOU ARE COMMANDED, that of the goods and chattels, lands and tenements of said defendant(s) and ESPECIALLY/ONLY of the following described property, to wit:

YOU cause to be made the several sums set out in the foregoing recital of the judgment in this case and have the said several sums of money before the Superior Court of this County at the next term of court, with this Writ to render to said plaintiff(s) the principal, interest, attorney fees and costs aforesaid.

Witness the Honorable___TOM DAVIS_____Judge of Said Court,

this the ___20TH_____day of___OCTOBER_____, _2010_.

TOM LAWLER, CLERK

By:_____
              Deputy Clerk

Entered on General Execution Docket_____, at Page_____this _____ day of_____, 20____.

ST-5 Rev. 85

FILED AND RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA.
2010 OCT 21  AM 9:51
TOM LAWLER, CLERK

070687

3717.3

EXHIBIT "B"

A diligent search was made and no property of the defendant(s) _____

has been found in this County, on which to levy this Fi. Fa.

This the _____ day of _____, 20___

_____
Deputy Sheriff

**STATE OF GEORGIA, COUNTY OF GWINNETT:**

I have this day executed the within Fi. Fa. by levying upon and seizing the following described property of defendant(s), to-wit:

One Each -
Stock Certificate #4
Insight Technology Inc.
300 Shares
(from Darren Brewer)

Levied at 75 Langley Dr, Lawrenceville
Georgia, this 6th day of December, 20 10

Sold for $500.00 on Feb. 01, 2011
Capt. B Milliner  Gwinnett Co. Sheriff
_____
Deputy Sheriff

**THE PROPERTY DESCRIBED IN LEVY WAS KNOCKED DOWN TO**

Sold for $500.00 on Feb 01, 2011

| | |
|---|---|
| Sheriff's Service | $ |
| Sheriff's Commission | $ 31.00 |
| Sheriff's Deed | $ |
| Sheriff's Levy | $ 50.00 |
| Advertising Fee | $ 120.00 |
| Other | $ |
| Total | $ 201.00 |
| Net Proceeds | $ 299.00 |

Capt. B Milliner / B Mill
_____
Sheriff

**STATE OF GEORGIA, COUNTY OF GWINNETT:**

I have this day executed the within Fi. Fa. by levying upon and seizing the following described property of defendant(s), to-wit:

**GED**

BK 03244 PG 0194

031377

FILED AND RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA
2011 FEB 24 AM 10: 11
TOM LAWLER, CLERK

Levied at _____
Georgia, this _____ day of _____, 20___

_____
Deputy Sheriff

**THE PROPERTY DESCRIBED IN LEVY WAS KNOCKED DOWN TO**

| | |
|---|---|
| Sheriff's Service | $ |
| Sheriff's Commission | $ |
| Sheriff's Deed | $ |
| Sheriff's Levy | $ |
| Advertising Fee | $ |
| Other | $ |
| Total | $ |
| Net Proceeds | $ |

_____
Sheriff

Christopher S. Hill (9931)
  chill@kmclaw.com
Shawn T. Richards (11949)
  srichards@kmclaw.com
**KIRTON & McCONKIE**
1800 Eagle Gate Tower
60 East South Temple
P.O. Box 45120
Salt Lake City, UT 84145-0120
Telephone: (801) 328-3600
Fax: (801) 321-4893

*Attorneys for Plaintiff*

## IN THE FOURTH JUDICIAL DISTRICT COURT IN AND FOR

## WASATCH COUNTY, STATE OF UTAH,

| | |
|---|---|
| DARREN BREWER, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>INSIGHT TECHNOLOGY, INC, a Delaware corporation,<br><br>    Defendant. | **COMPLAINT AND APPLICATION FOR INSPECTION OF CORPORATE RECORDS ON EXPIDITED BASIS**<br><br>Civil No. 100500492<br><br>Judge Pullan |

Plaintiff Darren Brewer ("Plaintiff" or "Brewer"), by and through counsel undersigned,

for complaint against defendant Insight Technology, Inc. ("Insight"), hereby alleges and

complains as follows:

### PARTIES, JURISDICTION AND VENUE

1.  Brewer is an individual residing in the state of Florida.

2.  Insight is a Delaware limited liability company with its principal place of business

in Heber City, Wasatch County, State of Utah.


EXHIBIT
"C"

3..     This Court has jurisdiction over this case pursuant to UTAH CODE ANN. § 78A-5-102(1).

4.     Venue is proper within this Court pursuant to UTAH CODE ANN. §§ 78B-3-307(1)-(2), 16-10(a)-1604, 16-10a-1702.

## BACKGROUND

5.     Brewer is the record owner of 300 shares of Insight's common stock, and has been since approximately June 2000.

6.     Insight is a Delaware corporation with its principal place of business, corporate headquarters, and executive offices are located in Heber City, Utah. Insight's corporate books and other corporate records are maintained in its offices in Heber City, Utah, Insight employs numerous Utah residents, Insight conducts substantial business in Utah, and Insight derives a substantial economic benefit from its business dealings in Utah.

7.     As a shareholder of record, Brewer has the specific legal right under DEL. CODE ANN. tit. 8, § 220 and under UTAH CODE ANN. § 16-10A-1602 to inspect and copy Insight's corporate records and documents during regular business hours upon written notice.

8.     To that end, on or about August 11, 2010, Brewer, through counsel, sent Insight a Notice to Inspect Records (the "Notice to Inspect") wherein he requested an inspection of Insight's corporate records by no later than August 16, 2010. A true and correct copy of the Notice to Inspect is attached hereto as Exhibit "A." The Notice to Inspect was accompanied by an affidavit dated August 10, 2010 from Brewer wherein Brewer testifies to the veracity of the information contained in the Notice to Inspect and to his record ownership of 300 shares of Insight's common stock. A true and correct copy of Brewer's August 10, 2010 affidavit is

2

attached hereto as part of Ex. "A."

9.    The Notice to Inspect was made in good faith and for a proper purpose. Indeed, in the Notice to Inspect, Brewer described that the purpose for Notice to Inspect was as follows:

> (i) to determine the value of the Common Stock; (ii) to determine the financial condition of the Company; (iii) to learn the propriety of dividend distribution; and (iv) to communicate with other stockholders on matters pertaining to their interests as stockholders, including, but not limited to, and subject to compliance with applicable law, the composition of the Board of Directors (including the potential removal of existing directors) and the enhancement of stockholder value.

(*See* Ex. "A" at 4.)

10.    The records/documents identified by Brewer in the Notice to Inspect were described with reasonable particularity, and are directly connected with his stated purpose for seeking inspection. (*See id.* at 1-4.)

11.    On or about August 26, 2010, Insight responded to the Notice to Inspect by requesting that Brewer provide documentation evidencing his ownership of 300 shares of Insight's common stock. A true and correct copy of Insight's August 26, 2010, letter is attached hereto as Exhibit "B."

12.    On or about August 31, 2010, Brewer, through counsel, provided Insight with the requested documentation evidencing his ownership of 300 shares of Insight's common stock. A true and correct copy of Brewer's August 31, 2010 letter to Insight, with its attachments, is attached hereto as Exhibit "C." In Brewer's August 31st letter, he requested that Insight make available for inspection the documents and records identified in the Notice to Inspect during the first week of September. (*See id.*)

13.    To date, Insight has failed and/or refused to respond to Brewer's August 31, 2010

4850-2044-3911

letter, and has failed and/or refused to make available for inspection and copying any of the records identified by Brewer in the Notice to Inspect.

### FIRST CLAIM FOR RELIEF
#### (Inspection of Records- Insight)

14.     Brewer incorporates paragraphs 1 through 13 above.

15.     Brewer is the record owner of 300 shares of Insight's common stock.

16.     As a shareholder, Brewer has a legal right under DEL. CODE ANN. tit. 8, § 220 to inspect Insight's books and other corporate records.

17.     Brewer also has a legal right to inspect Insight's corporate books under UTAH CODE ANN. §§ 16-10a-1602 and 16-10a-1702 because Insight's principal place of business is located in Utah, its executive offices are located in Utah, its corporate books and records and are maintained in Utah, Insight conducts substantial business in Utah, is subject to service of process in Utah, employs Utah residents, and derives substantial economic benefits from Utah.  Indeed, other than the state of incorporation, Insight has virtually no contact with the state of Delaware.

18.     To that end, Brewer sent Insight the Notice to Inspect wherein he stated the purpose for which he demanded inspection, and described with reasonable particularity the records which he wanted to inspect and/or copy.

19.     Moreover, the records which Brewer identified in the Notice to Inspect are directly connected with his stated purpose for seeking inspection.

20.     Brewer caused the Notice to Inspect to be sent to Insight in good faith and for a proper purpose, as stated in the Notice to Inspect.

21.     To date, Insight has, without lawful justification, wrongfully failed and/or refused to allow Brewer to inspect the records identified by Brewer in the Notice to Inspect.

4850-2044-3911

22.    Brewer is entitled to an order from this Court, on an expedited basis, requiring Insight to make available for Brewer's inspection and/or copying all documents identified by Brewer in the Notice to Inspect.  Furthermore, as available under applicable law, Brewer is entitled to an award of his attorneys' fees and costs incurred in brining this action to inspect Insight's corporate records.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Under the First Claim for Relief, an order from this Court compelling Insight to make available for Brewer's inspection and copying, on an expedited basis, all  documents identified by Brewer in the Notice to Inspect, and to an award of attorneys' fees and costs incurred in bringing this action as a result of Insight's wrongful refusal to make available its records for Brewer to inspect and copy.

B.    Any other legal and equitable relief that this Court deems just.

DATED this  5  day of October, 2010.

KIRTON & McCONKIE

By: _____
Christopher S. Hill
Shawn T. Richards
*Attorneys for Plaintiff*

Plaintiff's Address:

4025 Bermuda Grove Place
Longwood, FL 32779

5

# EXHIBIT A

# KIRTON & McCONKIE
A PROFESSIONAL CORPORATION
## ATTORNEYS AT LAW

1800 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE
P.O. BOX 45120
SALT LAKE CITY, UTAH 84145-0120
www.kmclaw.com

R. GARY WINGER
E-MAIL: gwinger@kmclaw.com

TELEPHONE (801) 328-3600
DIRECT (801) 323-5908
FAX (801) 212-2020
TOLL FREE (866) 867-5135

August 11, 2010

*Via Certified U.S. Mail, Return Receipt Requested*

Anthony Aliengena
President
Insight Technology, Inc.
820 South 300 West
Heber City, UT 84032

RE:    *Notice to Inspect Records*

Dear Mr. Aliengena:

      This law firm represents Darren Brewer ("Brewer"), who is the record owner of at least 300 shares (the "Shares") of common stock (the "Common Stock"), of Insight Technology, Inc., a Delaware corporation (the "Company"). Pursuant to Section 220 of the Delaware General Corporation Law, on behalf of Brewer, as the record holder of the Shares, we hereby demand the right (in person or by attorney or other agent), during the usual hours for business, to inspect the following records and documents of the Company (the "Stocklist Materials") and to make copies or extracts therefrom:

    a.   A complete record or list of the Company's stockholders, showing the name, address, account number and telephone number of each stockholder and the number of shares registered in the name of each such stockholder as of the most recent date available;

    b.   A CD or diskette or other electronic file of the Company's stockholders showing the names, account numbers and addresses of each stockholder and number of shares registered in the name of each such stockholder as of the most recent date available, together with such computer processing data and instructions as are necessary to make use of such electronic file, and a printout of such electronic file for verification purposes; and

4847-6397-3895.3

c. A list of all holders of options to purchase shares of Common Stock, the date on which any such option was granted, the date on which any such option becomes exercisable and the exercise price of any such option as of the most recent date available.

We further demand that modifications, additions or deletions to any and all information referred to in paragraphs (a) through (c) above as of the date of the list referred to in paragraph (a) above be immediately furnished to us as such modifications, additions or deletions become available to the Company or its agents or representatives through the date hereof.

The primary purpose of this demand for the Stocklist Materials is to enable Brewer to communicate with other stockholders of the Company regarding their mutual interests as Company stockholders.

In addition, pursuant to Section 220 of the Delaware General Corporation Law, and on behalf of Brewer, we hereby demand the right (in person or by attorney or other agent), during the usual hours for business, to inspect the following books and records and other documents of the Company (collectively, "Books and Records") and to make copies or extracts therefrom:

1.  The federal and state income tax returns of the Company for the tax years 2004-2009, inclusive;

2.  Any stockholder agreements and voting trusts and/or agreements;

3.  All presently effective employment contracts, change in control, termination or severance agreements, applicable to any employee, any director or officer of the Company, as well as any employee who is related by blood, adoption or marriage of any director or officer (an "Immediate Family Member");

4.  All ledgers or other financial records for the period January 1, 2004 to the present that record the status of any loans made by the Company to any officer or director of the Company or Immediate Family Member, including any agreements evidencing such loans;

5.  All ledgers or other records (financial or otherwise) for the period January 1, 2004 to the present that record the salaries, bonuses, benefits (including expense accounts), commissions, use of Company property or other payments paid to any officer, director or shareholder of the Company or to any Immediate Family Member or entity controlled by such Immediate Family Member;

6.  All agendas and minutes of meetings of the Board of Directors of the Company (including any Board resolutions) or of any committee of the Board of Directors, financial analyses, reports, appraisals, evaluations, notes or correspondence that refer to or discuss (i) the declaration of dividends by the Company or whether dividends should or should not be declared from January 1, 2004 to the present, inclusive, (ii) employee or director compensation from

4847-6397-3895.3

January 1, 2004 to the present, inclusive, or (iii) the employment agreements and/or severance payments contemplated thereby of any officer, director or Immediate Family Member;

7.   The agendas and minutes of stockholders' meetings of the Company from January 1, 2004 to the present, inclusive;

8.   The Certificate of Incorporation, Bylaws and financial statements (including, without limitation, all annual and interim financial statements) of the Company, and any amendments thereto;

9.   All documents evidencing ownership of real property including any sale or purchase agreements, and all agreements related to leases of real property;

10.  A list of assets currently owned by the Company and the current location thereof;

11.  All documents evidencing any outstanding loans (and the balances thereon) on which the Company is the obligor including, without limitation, all mortgages, notices of default and correspondence with respect to such loans, and all ledgers of other financial records regarding the balances due with respect to such loans;

12.  The following historical financial information with respect to the Company and its subsidiaries from January 1, 2004 to the present:

        a.  expense schedules (accrued or otherwise);

        b.  cash balances as of the end of each calendar year;

        c.  any detailed internal monthly financial reporting packages;

        d.  profit and loss budgets vs. actual, including any revised or interim profit and loss budgets, and any interim profit and loss budgets; and

        e.  business plans, including any business plans provided to any parties, any revised or interim business plans;

13.  The following current and forward looking financial information with respect to the Company:

        a.  any business plan and any budgets and projections for fiscal years 2009 and 2010 (with supporting detail);

        b.  detailed monthly financial reporting packages from January 1, 2004 to the present; and

4847-6397-3895.3

14. The Company's capital expenditure plans covering each of the fiscal years 2004-2010 and thereafter, and all documents discussing such plans.

Brewer has not received a dividend or a distribution from the Company since 2004. Brewer has not received any type of correspondence regarding the status of the Company, its financial condition, the value of Brewer's Shares, tax returns or any other type of notice regarding the Company or the Common Stock. Brewer is unable to properly evaluate the value of his Shares. The purposes of this demand to inspect the Company's Books and Records are (i) to determine the value of the Common Stock; (ii) to determine the financial condition of the Company; (iii) to learn the propriety of dividend distribution; and (iv) to communicate with other stockholders on matters pertaining to their interests as stockholders, including, but not limited to, and subject to compliance with applicable law, the composition of the Board of Directors (including the potential removal of existing directors) and the enhancement of stockholder value.

Please make the Stocklist Materials and Books and Records available for inspection no later than August 16, 2010, during normal business hours at the Company's principal place of business, 820 South 300 West, Heber City, UT 84032.

Please advise us where and when the Stocklist Materials and Books and Records will be available for inspection.

Enclosed herewith is an affidavit whereby Brewer, under oath, declares that the statements made herein are true and correct. Also enclosed herewith is a power of attorney whereby Brewer appoints and designates R. Gary Winger, Esq., of the law firm of Kirton & McConkie, P.C., to conduct the inspection and copying herein requested on his behalf.

Sincerely,

KIRTON & McCONKIE

R. Gary Winger

R. Gary Winger

4847-6397-3895.3

AFFIDAVIT

STATE OF _FLORIDA_    )
                                   : ss.
COUNTY OF _SEMINOLE_ )

    I, Darren Brewer, being first duly sworn, depose and state as follows:

    1.    I am the record owner of at least 300 shares of common stock of Insight Technology, Inc., a Delaware corporation (the "Company").

    2.    I hereby certify that the statements made in the attached letter of demand for the inspection of certain Stocklist Materials and Books and Records (as defined in such attached letter of demand) of the Company pursuant to Section 220 of the Delaware General Corporation Law are true and correct.

    DATED this _10_ day of August, 2010.

                                Darren Brewer

    On the _10_ day of August, 2010, before me, the undersigned notary public, personally appeared Darren Brewer, who being by me first duly sworn, did depose and say that he executed the foregoing instrument as his free and voluntary act and deed and that he acknowledged to and before me that the statements made therein are true and correct.

                                Notary Public

                                  ANGEL REYES
                                  NOTARY PUBLIC
                           Dekalb County - State of Georgia
                           My Comm. Expires Oct. 21, 2013

4847-1364-2247.2

# EXHIBIT B



820 S. 300 W        HEBER CITY, UT 84032

PH: (435) 657-1858      FAX: (435) 657-1861

Toll Free: (866) 218-0030

August 26, 2010

Kirton & McConkie
R. Gary Winger
1800 Eagle Gate Tower
60 East South Temple
P.O. Box 45120
Salt Lake City, UT 84145

RE:    Notice to Inspect Records

Dear Mr. Winger,

I am in receipt of your letter sent on August 11, 2010. I am unable to confirm your allegation that Darren Brewer is the record owner of at least 300 shares of common stock of Insight Technology, Inc. Please provide me with documentation that Mr. Brewer owns the alleged stock of Insight Technology, Inc. which supports your request for inspection of its records.

If your client would like to talk about the $1.2 million plus judgment Insight Technology, Inc. obtained against Mr. Brewer in Georgia, Gary Aliengena would be happy to entertain such dialogue.

If you have any questions or concerns please feel free to contact me.

Very truly yours,

Lannie Chapman
Legal assistant
800-373-1029 x 127

# EXHIBIT C

# KIRTON & McCONKIE

A PROFESSIONAL CORPORATION
## ATTORNEYS AT LAW

1800 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE
P.O. BOX 45120
SALT LAKE CITY, UTAH 84145-0120
www.kmclaw.com

R. GARY WINGER
E-MAIL: gwinger@kmclaw.com

TELEPHONE (801) 326-3600
DIRECT (801) 323-5908
FAX (801) 212-2020
TOLL FREE (866) 887-5135

August 31, 2010

Lannie Chapman
Legal Assistant
Insight Technology, Inc.
820 South 300 West
Heber City, UT 84032

*Via Certified U.S. Mail*
*and*
*Facsimile (435) 657-1861*

RE:    *Follow-up on Notice to Inspect Records*

Dear Ms. Chapman:

In response to your August 26, 2010 request, enclosed herewith is documentation evidencing that Darren Brewer is the record owner of 300 shares of Insight Technology, Inc.'s (the "Company") common stock. In particular, enclosed are excerpts from the December 17, 2004 continued deposition of Gary Aliengena wherein he testifies that Mr. Brewer is a twenty-percent (20%) shareholder of the Company, owning 300 shares of its common stock. Also enclosed is a copy of the Company's general ledger showing that as of June 2000, Mr. Brewer was the beneficial owner of 300 shares of the Company's common stock.

Please provide me with a date and time next week or Thursday and Friday this week when Mr. Brewer (in person or by an attorney or other agent) can inspect and/or copy the requested records and documents. Please be advised that if I do not hear from you by the end of day tomorrow, Mr. Brewer has authorized us to proceed with filing a civil action against the Company to compel the requested inspection. In any such civil action, we will ask the Court to award any and all costs and attorneys' fees incurred in bringing the action.

Govern yourself accordingly,

KIRTON & McCONKIE

R. Gary Winger

Enclosures

295

1              IN THE SUPERIOR COURT OF GWINNETT COUNTY
                         STATE OF GEORGIA

2

3

4    INSIGHT TECHNOLOGY, INC.,           )
                                         )
                                         )
5                                        )
                Plaintiff,               )
                                         )
6                                        )
            vs.                          )   CIVIL ACTION
                                         )   FILE NO.:
7                                        )   04-A02940-1
                                         )
8    FREIGHTCHECK, LLC, a Virginia       )
     Limited Liability Company,          )
9    GETLOADED.COM, a Virginia Limited   )
     Liability Company, DARREN BREWER    )
10   and PATRICK HULL,                   )
                                         )
11              Defendants.              )

                     - - -

12

13

14          Continuation of the Videotaped

15   Deposition of GARY ALIENGENA, taken on behalf

16   Of the Defendants, pursuant to the

17   stipulations agreed to herein, before

18   Steve S. Huseby, Registered Professional

19   Reporter and Notary Public, at Morris, Manning

20   & Martin, 1600 Atlanta Financial Center, 3343

21   Peachtree Road, N.E, Atlanta, Georgia, on the

22   17th day of December, 2004, commencing at the

23   hour of 8:53 a.m.

24

25

36

1    one is yourself and one is Robert Westwood.

2    The signature above your name, does that look

3    like your signature?

4        A.   It does.

5        Q.   And it says as sole shareholder of

6    Insight Financial.

7        A.   Right.

8        Q.   Why does it say as sole shareholder

9    of Insight Financial?

10       A.   I'm the sole shareholder of Insight

11   Financial Limited.

12       Q.   Do you know why it would say that in

13   this Insight Technology?  Is it because

14   Insight Financial was the owner of your

15   shares?

16       A.   I guess so.

17       Q.   You guess so or you don't know?

18       A.   Well, I don't know when that -- I

19   believe that those shares were -- I don't have

20   a clear recollection of my ownership, when it

21   was myself individually, when it moved, and if

22   it was started that way.  I don't have a

23   recollection of exactly how the chain of

24   ownership went.

25       Q.   Is it your recollection that as of

1    June 5th, 2000, that Darren Brewer, yourself,

2    or Insight Financial and Robert Westwood were

3    the shareholders of Insight?

4        A.   Yeah.

5        Q.   Actually on the next page there's a

6    document entitled Corporate Resolutions.  And

7    if you flip to the next page, you'll see your

8    name listed as secretary, and is that your

9    signature signing this document?

10       A.   Yes, sir.

11       Q.   And this is June 8th, 2000, so this

12   is three days after that document we looked at

13   just a second ago, which was the Consent of

14   Shareholders?

15       A.   Uh-huh.

16       Q.   And this one says resolved all -- in

17   the middle of the page.  Do you see where it

18   says resolved in big bold letters?

19       A.   Uh-huh.

20       Q.   It says, resolved, all shares owned

21   by Transportation Staffing Services will be

22   returned to Insight Technology, and reissued

23   for one penny per share and other good and

24   valuable consideration in the following

25   amounts.  And it says Robert Westwood, 525

1  shares, Insight Financial, 675 shares, and

2  Darren Brewer, 300 shares, is that right?

3      A.  Uh-huh, that is.

4      Q.  My calculations are -- I'm not a good

5  mathematician.  I know that 300 is 20 percent

6  of 1500 for Darren Brewer.  I don't know what

7  the exact percentages are for the other two

8  without pulling out a calculator.  Does this

9  refresh your recollection that it was in June

10  of 2000 that Transportation Solutions, which

11  had been the 100 percent --

12      A.  TSS.

13      Q.  Yes, you got to keep correcting me on

14  that.  TSS returned the 1500 shares it owned.

15  Those 1500 shares were then redistributed to

16  Robert Westwood, Darren Brewer and Insight

17  Financial?

18      A.  I believe so, yes.

19      Q.  And then the next document is Insight

20  Technology, Inc. Minutes of Board of Directors

21  Meeting March 17, 2004.  And it has a

22  signature at the bottom that says Gary

23  Aliengena, director.  Is that your signature?

24      A.  Yes.

25      Q.  And March 17, 2004, is the date that

1    Darren Brewer was terminated, is that right?

2       A.   That's correct.

3       Q.   And this changes the officers to

4    yourself as president, vice president and

5    secretary and treasurer, is that right?

6       A.   That's correct.

7       Q.   And Robert Westwood is not mentioned

8    on here.  Why is Robert Westwood not

9    referenced?

10      A.   He was no longer a part of the

11    company at that time.

12      Q.   So somewhere between June 2000 and

13    March 2004 Robert Westwood ceased to be a

14    shareholder?

15      A.   That's correct.

16      Q.   Darren Brewer did not participate in

17    the meeting or this resolution, correct?

18      A.   That's correct.

19      Q.   Is Darren Brewer still a 20 percent

20    shareholder?

21      A.   Yes.

22      Q.   And he's still a 20 percent

23    shareholder today?

24      A.   I believe so, yeah.

25      Q.   And am I using the right number, 20

| | NAME OF STOCKHOLDER | PLACE OF RESIDENCE | TIME BECAME OWNER | CERTIFICATES ISSUED | | FROM WHOM SHARES WERE TRANSFERRED (If Original Issue Enter As Such) |
|---|---|---|---|---|---|---|
| | | | | CERTIF. NOS. | NO. SHARES | |
| A | Transportation Staffing Services, Inc. | P.O. Box 1176 Park City, UT 84060 | 8/25/96 | 1 | 1500 | Original |
| | Robert Westwood | | 6/2000 | 2 | 525 | |
| B | Insight Financial LTD | 870 S. 300 West Heber City, UT 84032 | 6/2000 | 3 | 675 | |
| | Darren Brewer | | 6/2000 | 4 | 300 | |
| C | | | | | | |
| D | | | | | | |
| E | | | | | | |
| F | | | | | | |
| G | | | | | | |

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

DARREN BREWER,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )
                                        )      CASE NO. _____
INSIGHT TECHNOLOGY, INC.,               )
                                        )
        Defendant.                      )
                                        )

### VERIFIED COMPLAINT
### FOR TEMPORARY AND PERMANENT
### <u>INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT</u>

COMES NOW Plaintiff Darren Brewer ("Plaintiff") and hereby files this Verified

Complaint for Temporary and Permanent Injunctive Relief and Declaratory Judgment against

Defendant Insight Technology, Inc. ("Defendant") as follows:

1.

Plaintiff is a resident of Florida.

2.

Defendant a Delaware corporation transacting business in Georgia and is subject

to the jurisdiction of this Court.  Defendant may be served with process through its Chief

Executive Officer, Gary Aliengena at 6041 Highway 81 North, Loganville, Georgia

30052, Walton County.

3.

Venue is proper in this Court because this action challenges a Notice of Levy

which was filed in this Court.

- 1 -


EXHIBIT
"D"

4.

On or about December 6, 2010, Defendant caused to be filed a Notice of Levy in the Superior Court of Gwinnett County, File No. 04-A-02940-9 Fi Fa. (A true and correct copy of the Notice of Levy is attached hereto and incorporated herein by reference as Exhibit A.)

5.

The Notice of Levy purports to permit and require the Sheriff of Gwinnett County to levy on 300 Shares of Stock, Certificate No. 4, in Insight Technology, Inc. (the "Stock Certificates").

6.

The Notice of Levy indicates that the sale of the Stock Certificates will take place on February 1, 2011.

7.

The Notice of Levy is procedurally and substantively defective.

8.

The Notice of Levy is deficient on its face because it does not contain all of the requirements set forth in O.C.G.A. § 9-13-10. Specifically, the Notice of Levy is deficient because 1) it was not issued by Clerk of Gwinnett County Superior Court; rather it was merely signed by a representative of the Sheriff's Office; 2) it does not bear the name of the judge of the court in which the judgment was obtained; and 3) it was not directed "To all and singular the sheriffs of this state and their lawful deputies" as required by O.C.G.A. § 9-13-10.

- 2 -

9.

The Notice of Levy is also improper because, as a chose in action, the Stock Certificates

cannot be levied upon without a proceeding collateral to the action in which the judgment was

obtained, and Defendant has not initiated such a collateral proceeding. *See* O.C.G.A. §§ 9-13-

57; 9-13-58, *Prodigy Centers/Atlanta No. 1 L.P. v. T-C Assoc., Ltd.*, 269 Ga. 522, 501 S.E.2d

209 (1998); *Fid. & Dep. Co. of Maryland v. Exchange Bank of Macon*, 100 Ga. 619, 28 S.E. 393

(1897); *Grossman v. Glass*, 239 Ga. 319, 236 S.E.2d 657 (1977).

10.

The Notice of Levy is also improper because the Stock Certificates are not located in

Georgia and Insight Technology, Inc. is not registered to transact business in Georgia.

11.

The Notice of Levy is levy is improper because Defendant has made no effort to ensure

that the Stock Certificates will be sold at fair market value.

12.

The Notice of Levy is improper because it inaccurately states that the Stock Certificates

are the property of Plaintiff.

13.

Plaintiff no longer owns the Stock Certificates as they were previously transferred to

another non-party.

### Count I
### Temporary and Permanent Injunctive Relief

14.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1-13 of the

Complaint.

15.

This Court is authorized, pursuant to O.C.G.A. § 9-11-65 and interpretive case law, to grant this request for a temporary and permanent injunction prohibiting Defendant from proceeding with the scheduled sale of Stock Certificates.

16.

Balancing the conveniences of Plaintiff on the one hand, and Defendant on the other, this Court should enjoin the scheduled sale of Stock Certificates.

17.

Granting that relief will cause Defendant no hardship whatsoever.

18.

Since Defendant proposes to sell the Stock Certificates, Plaintiff will suffer immediate and irreparable harm absent injunctive relief.

**Count II**
**Declaratory Action**

19.

Plaintiff incorporates the allegations contained in Paragraphs 1-18 of the Complaint.

20.

This claim is an action for declaratory judgment brought pursuant to the provisions of O.C.G.A. § 9-4-1, *et seq.*

21.

An actual controversy exists between the parties in this case with regard to whether the Stock Certificates are subject to levy.

- 4 -

22.

The Stock Certificates are not subject to levy because Plaintiff does not own the Stock Certificates.

23.

It is necessary and proper that the rights and status among the parties hereto be declared, including status of ownership as it relates to the Stock Certificates.

24.

Plaintiff is entitled to a declaration that he does not own the Stock Certificates and that the Stock Certificates are not subject to levy.

WHEREFORE, Plaintiff respectfully prays for the following relief:

a) That the Court issue a temporary and permanent injunction preventing Defendant from proceeding with the scheduled sale of Stock Certificates;

b) That the Court declare that the Stock Certificates are not the property of Plaintiff and therefore not subject to levy or execution; and

c) That the Court award such other and further relief as may be just and proper.

Respectfully submitted this 13th day of January, 2011.

SLOTKIN LAW FIRM, P.C.

*Anne P. Caiola*

F. Robert Slotkin, Jr.
Georgia Bar No. 653001
Anne P. Caiola
Georgia Bar No. 142639
Attorneys for Plaintiff Darren Brewer

111 North McDonough Street
Decatur, Georgia 30030
404-370-1041 phone
404-370-1161 fax

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

DARREN BREWER,                          )
                                        )
    Plaintiff,                          )
                                        )
v.                                      )
                                        )   CASE NO. _____
INSIGHT TECHNOLOGY, INC.,               )
                                        )
    Defendant.                          )
                                        )

## VERIFICATION

Personally appeared before the undersigned officer duly authorized by law to administer

oaths, Darren Brewer, who, after being duly sworn, deposes and states on oath that the facts

contained in the foregoing Verified Complaint for Temporary and Permanent Injunctive Relief

and Declaratory Judgment are true and correct.

This the 10th day of January, 2011.

_____
Darren Brewer

Sworn to and
subscribed before me
this 10 day of January 2011.


Notary Public
My commission expires: _____

JACALYN J. ROYAL
NOTARY PUBLIC
STATE OF FLORIDA
Comm# DD977667
Expires 4/1/2014

- 6 -

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

DARREN BREWER,               )
                                  )
      Plaintiff,             )
                                    )
v.                            )
                                  )    CASE NO. _____
INSIGHT TECHNOLOGY, INC.,  )
                                  )
      Defendant.         )
                                  )

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I served all parties in the above-referenced matter with a true and correct copy of the following *VERIFIED COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT* by depositing a copy of the same in the United States mail, in a properly addressed envelope with adequate postage fixed thereon, addressed to:

Bruce E. Mitchell, Esq.
The Mitchell Law Firm
3390 Peachtree Road, NE, Suite 520
Atlanta, GA 30326

This 13th day of January, 2011.

*Anne P. Caiola*
Anne P. Caiola
Attorney for Plaintiff Darren Brewer

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

DARREN BREWER,                          )
                                        )
      Plaintiff,                      )
                                        )
v.                                      )
                                        )        CASE NO. _____
INSIGHT TECHNOLOGY, INC.,               )
                                        )
      Defendant.                      )
                                        )

### PLAINTIFF'S MOTION FOR
### TEMPORARY AND PERMANENT INJUNCTIVE
### RELIEF AND DECLARATORY JUDGMENT

COMES NOW Darren Brewer, Plaintiff/Movant herein, and moves pursuant to O.C.G.A.

§ 9-11-65 for an injunction preventing the scheduled sale of 300 Shares of Stock, Certificate No.

4 in Insight Technology, Inc. (the "Stock Certificates") scheduled for February 1, 2011 as

indicated in the Notice of Levy attached to the Verified Complaint as Exhibit A. In addition,

pursuant to O.C.G.A. § 9-4-1, *et seq.*, Plaintiff moves the Court to declare that the Stock

Certificates are not the property of Plaintiff and therefore not subject to levy.

In support of this Motion, Plaintiff incorporates and relies upon as if fully set forth

herein, the Verified Complaint for Temporary and Permanent Injunctive Relief and Declaratory

Judgment, and all exhibits attached thereto and his Brief in Support of Motion for Temporary

and Permanent Injunctive Relief and Declaratory Judgment. Plaintiff shows that, through his

attorneys, he has given notice to Defendant that he would be seeking injunctive relief on January

13, 2011.

1


EXHIBIT
"E"

WHEREFORE, Plaintiff prays that his Motion be granted; that Defendant be enjoined from proceeding with the referenced sale of Stock Certificates; and that this Court declare that the Stock Certificates are not the property of Plaintiff and therefore not subject to levy.

Respectfully submitted this 13th day of January, 2011.

SLOTKIN LAW FIRM, P.C.

F. Robert Slotkin, Jr.
Georgia Bar No. 653001
Anne P. Caiola
Georgia Bar No. 142639
Attorneys for Plaintiff Darren Brewer

111 North McDonough Street
Decatur, Georgia 30030
404-370-1041 phone
404-370-1161 fax

2

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

DARREN BREWER,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )
                                        )   CASE NO. _____
INSIGHT TECHNOLOGY, INC.,               )
                                        )
        Defendant.                      )
                                        )

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I served all parties in the above-referenced matter with a

true and correct copy of the following *MOTION FOR TEMPORARY AND PERMANENT*

*INJUNCTIVE RELIEF AND DELCARATORY JUDGMENT* by depositing a copy of the same in

the United States mail, in a properly addressed envelope with adequate postage fixed thereon,

addressed to:


Bruce E. Mitchell, Esq.
The Mitchell Law Firm
3390 Peachtree Road, NE, Suite 520
Atlanta, GA 30326

This 13th day of January, 2011.


*Anne P. Caiola*
Anne P. Caiola
Attorney for Plaintiff Darren Brewer

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

DARREN BREWER,                    )
                                  )
        Plaintiff,                )
                                  )
v.                                )
                                  )    CASE NO. _____
INSIGHT TECHNOLOGY, INC.,         )
                                  )
        Defendant.                )
                                  )

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

COMES NOW Darren Brewer, Plaintiff/Movant herein ("Plaintiff"), and files this Brief in Support of Motion for Temporary and Permanent Injunctive Relief and Declaratory Judgment as follows:

### Statement of Facts

On July 18, 2008, Defendant Insight Technology, Inc. ("Defendant") obtained a judgment against Plaintiff in the Superior Court of Gwinnett County in the amount of $1,375,000. On or about December 6, 2010, Defendant caused to be filed a Notice of Levy in the Superior Court of Gwinnett County, File No. 04-A-02940-9 Fi Fa. (A true and correct copy of the Notice of Levy is attached to the Verified Complaint as Exhibit A and incorporated herein by reference.) The Notice of Levy purports to permit and require the Sheriff of Gwinnett County to levy on 300 Shares of Stock, Certificate No. 4, in Insight Technology, Inc. (the "Stock Certificates") on February 1, 2011. The Notice of Levy is procedurally invalid, substantively defective on its face, as well as unfairly prejudicial to Plaintiff.

1

As a procedural matter, the Notice of Levy fails to include several key components required to be included in executions pursuant to O.C.G.A. §9-13-10. The Notice of Levy is also procedurally invalid because, as choses in action, the Stock Certificates cannot be levied upon without initiating a proceeding collateral to the action in which the judgment was obtained, and Defendant has not initiated such a collateral proceeding. *See* O.C.G.A. §§ 9-13-57, 9-13-58; *Prodigy Centers/Atlanta No. 1 L.P. v. T-C Assoc., Ltd.*, 269 Ga. 522, 501 S.E.2d 209 (1998); *Fid. & Dep. Co. of Maryland v. Exchange Bank of Macon*, 100 Ga. 619, 28 S.E. 393 (1897); *Grossman v. Glass*, 239 Ga. 319, 236 S.E.2d 657 (1977). In addition, the Notice of Levy fails because the property to be levied upon is not located in Georgia. Specifically, the Stock Certificates themselves are not located in Georgia and the shares which are represented by the Stock Certificates are in a corporation that is not even authorized to transact business in Georgia.

Moreover, the scheduled levy is ripe for irreparable abuse because there are no statutory protections in place, nor has Defendant undertaken any efforts, to ensure that the Stock Certificates are sold at a fair value. Unless this Court steps in, nothing will prevent Defendant from bidding in the Stock Certificates at a price that it is significantly less than their value; thereby reducing Plaintiff's judgment by an unfairly low amount. As a result, this Court should permanently enjoin the February 1, 2011 sale of Stock Certificates, or at a minimum, temporarily enjoin the sale pending an accounting by Plaintiff to verify the value of the Stock Certificates.

Finally, the Notice of Levy is substantively invalid because it inaccurately states that Plaintiff is the owner of the Stock Certificates, when, in fact, Plaintiff transferred the Stock Certificates to non-party Concentric Technologies, LLC well before the Notice of Levy was ever

filed. Defendant cannot be permitted to levy upon property which does not belong to Plaintiff.[1]
As a result, Plaintiff respectfully requests that this Court declare that the Stock Certificates are
not the property of Plaintiff and therefore not subject to levy.

### Argument and Citation of Authority

A.    A Temporary And Permanent Injunction Is Authorized Under The Facts
      And Circumstances Of This Case.

This Court is authorized, pursuant to O.C.G.A. § 9-11-65 and interpretive case law, to
grant Plaintiff's request for a temporary and permanent injunction prohibiting Defendant from
selling the Stock Certificates on February 1, 2011. A court is authorized pursuant to O.C.G.A. §
9-11-65(a) to issue a preliminary or interlocutory injunction exceeding 30 days if notice has been
provided to the other party, which in this case, it has.

"The sole purpose for granting interlocutory injunctions is to preserve the status quo of
the parties pending final adjudication of the case." *Poe & Brown of Georgia, Inc. v. Gill*, 268
Ga. 749, 750, 492 S.E.2d 864 (1997). "A trial court may issue an interlocutory injunction to
maintain the status quo until the final hearing if, by balancing the relative equities of the parties,
it would appear that the equities favor the parties seeking the injunction. Thus, a demonstration
of irreparable injury is not an absolute prerequisite to interlocutory injunctive relief." *Parker v.
Clary Lakes Recreation Ass'n, Inc.*, 272 Ga. 44, 45, 526 S.E.2d 838 (2000).

With respect to applications for interlocutory injunction, the Georgia Supreme Court has
recognized "[t]here should be a balance of conveniences in such cases, and a consideration
whether greater harm might be done by refusing than granting the injunction." *Ward v. National
Dairy Products Corp.*, 224 Ga. 241, 245, 161 S.E.2d 305 (1968).

---

[1] While Plaintiff no longer owns the Stock Certificates, his interest in bringing this Motion rests in the fact that he is
a member of Concentric Technologies, LLC and needs the Court's record concerning Plaintiff's ownership interests
to be correct.

3

> Where the evidence is conflicting, and it appears that the injunction if granted would not operate oppressively to the defendant, but that if denied the complainant would be practically remediless in case he should thereafter establish the truth of his contentions, it would be strong reason why the chancellor should exercise his discretion so as to preserve the rights by preserving the status.

*Ward,* 224 Ga. at 245.

Balancing the conveniences of Plaintiff on the one hand, and Defendant on the other, this Court should enjoin Defendant's scheduled sale of the Stock Certificates. Granting that relief will cause Defendant no hardship whatsoever, apart from a short delay in proceeding with the scheduled sale. However, unless injunctive relief is granted, the Stock Certificates could be irrevocably sold to the detriment of Plaintiff and non-party, Concentric Technologies.

**B.    Plaintiff is likely to succeed on the merits.**

The Notice of Levy should be permanently enjoined because it contains a number of procedural deficiencies making it improper for Defendant to proceed with the scheduled sale of Stock Certificates. As an initial matter, the Notice of Levy does not contain all of the content required by law to make the Notice effective. O.C.G.A. § 9-13-10 provides: "Except as otherwise provided by law, executions shall be issued by the clerk of the court in which judgment is obtained, shall bear teste in the name of the judge of such court, shall bear date from the time of their issuing, shall be directed 'To all and singular the sheriffs of this state and their lawful deputies,' and may be levied on all the estate of the defendant, both real and personal, which is subject to levy and sale." The Notice of Levy is deficient because 1) it was not issued by Clerk of Gwinnett County Superior Court; rather it was merely signed by a representative of the Sheriff's Office; 2) it does not bear the name of the judge of the court in which the judgment was obtained; and 3) it was not directed "To all and singular the sheriffs of this state and their lawful deputies." *Compare* O.C.G.A. § 9-13-10 *with* Exhibit A to Verified Complaint. As a result, the Notice of Levy is insufficient to effectuate a lawful levy.

4

Even if the Notice of Levy did contain all of the required content, which it does not, stock certificates cannot be levied upon without initiating a separate proceeding collateral to that in which the judgment was obtained. Georgia law is clear that stock certificates are the subject of a special statutory provision regarding execution. "Choses in action are not liable to be seized and sold under execution, unless made so specially by statute." O.C.G.A. § 9-13-57. Shares in stock are choses in action. *Fourth Nat. Bank v. Swift & Co.*, 160 Ga. 372, 373, 127 S.E. 729, 730 (1925).

To that end, O.C.G.A. § 9-13-58 provides the exclusive method for levying upon stock:

> Upon demand by any sheriff, constable or other levying officer having in his hands any execution against any person who is the owner of any shares of stock of a bank or corporation upon the president, superintendent, manager, or other officer having access to the books of the bank or corporation, the president, superintendent, manager, or other officer aforesaid shall disclose to the levying officer the number of shares and the par value thereof owned by the defendant in execution and, on refusal to do so, shall be considered contempt of court and punished accordingly.

O.C.G.A. § 9-13-58.

In addition to requiring that the sheriff hold a proper execution before levying upon stock, the law also requires that the judgment creditor initiate a separate collateral proceeding in order to effectuate the levy.

> Choses in action are not subject to seizure and sale under executions based upon ordinary judgments. In order to reach the property of the debtor in such choses in action, some other additional proceeding is necessary to fix the lien of such judgments. It must be reached either by process of garnishment or by some collateral proceeding instituted for the purpose of impounding it so that it can be applied in satisfaction of the judgment. Until it has been so seized by the courts for the purpose of appropriating it to the payment of the judgment, it is still subject to the dominion and control of the debtor.

*Prodigy Centers/Atlanta No. 1 L.P. v. T-C Assoc., Ltd.*, 269 Ga. 522, 525, 501 S.E.2d 209, 212 (1998) (quoting *Fid. & Dep. Co. of Maryland v. Exchange Bank of Macon*, 100 Ga. 619, 625, 28

S.E. 393 (1897). *See also Grossman v. Glass*, 239 Ga. 319, 236 S.E.2d 657 (1977) (where the judgment creditor brought a separate action against the judgment debtor and the corporations in which the debtor owned stock in order to have the stock properly delivered to the court for levy and sale by the sheriff). Defendant has not initiated a separate collateral proceeding for the purpose of impounding the Stock Certificates and appropriating them to the payment of the judgment.

Defendant's failure to initiate a separate collateral proceeding only underscores the prejudice that Plaintiff will suffer if the scheduled sale ensues. Specifically, had Defendant initiated a separate legal action, a court could have supervised the sale to ensure that the judgment against Plaintiff was given a fair credit. By ignoring the legal procedures for initiating a separate proceeding, Defendant seeks to conduct an unsupervised and unauthorized sale that will undoubtedly result in a windfall to Defendant.

Finally, the Notice of Levy also fails because the property to be levied upon is not located in Georgia. The Gwinnett County Sheriff can only levy upon property that is located in Georgia or subject to Georgia's jurisdiction. *See generally, Atlas Supply Co. v. U.S. Fid. & Guar. Co.*, 126 Ga. App. 483, 484, 191 S.E.2d 103, 104 (1972) ("In the absence of any legal requirement that sureties be residents of this State, the question of the surety's residence is not relevant, the issue here being the sufficiency of the surety's leviable assets *within* the State." (emphasis added)). As discussed more below, the Stock Certificates are now owned and in the possession of Concentric Technologies, LLC. Concentric Technologies is not registered in Georgia, has no offices in Georgia and transacts no business in Georgia. Further, the shares represented by the Stock Certificates are in Insight Technology, Inc., a corporation that is not authorized to transact business in Georgia. According to the Georgia Secretary of State's website, Insight Technology,

6

Inc.'s corporate status is "withdrawn," and it has no registered agent in Georgia. The address provided for Insight Technology's principal place of business is on Jimmy Carter Boulevard in Park City, Georgia 84060 – a non-existent address. Also lacking any connection to Georgia is the judgment-debtor, Mr. Brewer, who resides in Florida. Under these circumstances, it is improper for the scheduled levy to take place in Georgia.

### C.    Plaintiff Will Suffer Irreparable Harm Unless The Court Enjoins The Scheduled Sale Of Stock Certificates.

If Defendant is permitted to proceed with the scheduled levy, the likely and practical result would be that Defendant alone shows up at the scheduled sale and bids in the Stock Certificates for a paltry sum. In this event, Defendant's judgment against Plaintiff could be reduced by only pennies, when, in fact, the true value of the stock would be enough to completely satisfy the judgment. Plaintiff has been hard-pressed to find any statutory safeguards that would preclude this inequity, nor can Defendant point to any efforts it has taken to ensure a fair sale. Given the irreparable harm that will befall Plaintiff if Defendant proceeds with the scheduled sale, this Court should permanently enjoin the sale, or at a minimum temporarily enjoin the sale pending an accounting by Defendant to verify the value of the Stock Certificates. Conversely, Defendant will suffer no hardship whatsoever if the court grants this motion. Defendant has the remedy complying with the levy statute.

### D.    The Court Should Declare That The Stock Certificates Are Not The Property Of Plaintiff And Therefore Not Subject To Levy.

O.C.G.A. §9-4-2 provides that "[i]n cases of actual controversy, the respective superior courts of this state shall have power...to declare rights and other legal relations of any interested party petitioning for such declaration...." The purpose of the foregoing statute is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." O.C.G.A. § 9-4-1. An actual controversy exists between Plaintiff and Defendant

7

with respect to the ownership status of the Stock Certificates and whether the Stock Certificates are subject to levy.  Specifically, in filing the Notice of Levy, Defendant inaccurately stated that the "Stock levied upon as property of said Defendant [referring to Mr. Brewer, Plaintiff herein]." *See* Exhibit A to Verified Complaint.  However, Plaintiff transferred the Stock Certificates to non-party, Concentric Technologies, before the Notice of Levy was issued – a transfer which is authorized by the law.  *See Prodigy Centers/Atlanta No. 1,* 269 Ga. at 525, 501 S.E.2d at 212 ("Until [the stock] has been so seized by the courts for the purpose of appropriating it to the payment of the judgment, it is still subject to the dominion and control of the debtor.") (quoting *Fid. & Dep. Co. of Maryland,* 100 Ga. at 625, 28 S.E. at 395.)  As a result, pursuant to O.C.G.A. § 9-4-1 *et seq.*, this Court should declare that the Stock Certificates are not the property of Plaintiff and therefore not subject to levy.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court permanently and temporarily enjoin the scheduled sale of Stock Certificates and declare that the Stock Certificates are not subject to levy.

Respectfully submitted this 13th day of January, 2011.

SLOTKIN LAW FIRM, P.C.

*Anne P. Caiola*

F. Robert Slotkin, Jr.
Georgia Bar No.  653001
Anne P. Caiola
Georgia Bar No. 142639
Attorneys for Plaintiff Darren Brewer

111 North McDonough Street
Decatur, Georgia  30030
404-370-1041 phone
404-370-1161 fax

9

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

DARREN BREWER,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )
                                        )    CASE NO. _____
INSIGHT TECHNOLOGY, INC.,               )
                                        )
        Defendant.                      )
                                        )

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I served all parties in the above-referenced matter with a

true and correct copy of the following *BRIEF IN SUPPORT OF MOTION FOR TEMPORARY*

*AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT* by depositing a

copy of the same in the United States mail, in a properly addressed envelope with adequate

postage fixed thereon, addressed to:


Bruce E. Mitchell, Esq.
The Mitchell Law Firm
3390 Peachtree Road, NE, Suite 520
Atlanta, GA 30326

        This 15th day of January, 2011.


                                        _____
                                        Anne P. Caiola
                                        Attorney for Plaintiff Darren Brewer

**BILL OF SALE**

STATE OF GEORGIA

COUNTY OF GWINNETT

KNOW ALL MEN BY THESE PRESENTS:

THAT R.L. "Butch" CONWAY, Sheriff, Gwinnett County, Georgia for Five Hundred Dollars ($500.00) and other good and valuable consideration paid by Insight Technology, Inc. pursuant to a Sheriff's Sale conducted on February 1, 2011 at the Gwinnett County Justice and Administration Center during the regular hours of business, the receipt and sufficiency of which are hereby acknowledged, has granted, sold, conveyed, transferred and delivered, and by these presents does grant, sell, convey, transfer and deliver on an "as is" basis, without warranty of any kind unto Insight Technology, Inc., its successors and assigns, the following intangible personal property, to wit:

300 shares of common stock issued in the name of the judgment debtor,
Darren Brewer, in a privately held Delaware corporation, Insight
Technology, Inc.

IN WITNESS WHEREOF, the undersigned has executed this document under seal in the presence of the undersigned officer, this _24_ day of February, 2011.

SHERIFF, GWINNETT COUNTY, GEORGIA

R. L. "Butch" Conway

Sworn to and subscribed before me
this _24_ day of _Feb._ , 2011.

*Linda L. Haywood*
Notary Public
My commission expires:___**Notary Public, Gwinnett County, Georgia**
**My Commission Expires Feb. 6, 2012**

EXHIBIT "F"

1          I want to ask you a few questions about Exhibit A.  Is

2   the first page, the letter dated August 3 or the writing date is

3   August 3, 2005, do you have the original of that document?

4       A.   Not with me.

5       Q.   But you have it?  You have it in your possession

6   somewhere?

7       A.   I don't know.  I'd have to look.

8       Q.   Well, how did you make a copy of it if you didn't have

9   the original?

10      A.   I had a PDF file.

11      Q.   So you don't know if you have the original?

12      A.   No, at this time I do not.

13      Q.   Do you know -- are you testifying under oath that you

14  signed this notice of stock sale document and this assignment

15  and bill of sale in -- on July 28, 2005 for the assignment and

16  bill of sale and August 3 of 2005 for the notice of stock sale?

17      A.   What was the last?  August?

18           THE COURT:  The dates contained on the document.

19           THE WITNESS:  Yes, sir.

20  BY MR. STOKES:

21      Q.   That's the dates that you signed those two documents?

22      A.   Yes.

23      Q.   And that's the date that you are here, under oath,

24  testifying that you sold or transferred the stock of Insight

25  Technology to Concentrik Technologies; is that correct?

EXHIBIT
"G"

19

1       A.    Yes.

2       Q.    All right.  Mr. Brewer, do you recall the trial in

3   2007 of this case?

4       A.    Generally, yes.

5       Q.    You testified in that trial, Mr. Brewer.  And in that

6   trial, in the transcript which I'm holding, you say:  Because

7   I'm a shareholder.  This is my company.

8            Didn't you take the position in court before this

9   judge that you were the 49 percent shareholder of Insight

10  Technology?

11           MS. CAIOLA:  Objection, Your Honor.  If counsel is

12      going to be quoting and using portions of a transcript from

13      a trial, I think that the witness is entitled to see a copy

14      of that, and I'd like to see a copy of it as well before

15      he's pinned with the words.

16           THE COURT:  At this point in time, he's asking him

17      whether or not he's made a prior inconsistent statement.

18      He's recalled the time and date and the circumstances.

19           Of course, he should let both of you see a copy of it,

20      if that's what he's got.  But he doesn't -- in point of

21      fact, he doesn't have to produce the official transcript.

22      He just needs to do enough to call his attention to what he

23      alleges is the prior inconsistent statement.

24           Go ahead and show it to him.

25           MR. STOKES:  Well, let me ask the question first that

                                                              20

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY GA

11 JAN 28 PH 3: 07

TOM LAWLER, CLERK

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

DARREN BREWER          :

      Plaintiff,          :

                :      CIVIL ACTION

v.                :      FILE NO. 11-A-00375-9

INSIGHT TECHNOLOGY, INC.,          :

      Defendant.          :

---

## ORDER ON PLAINTIFF'S
## REQUEST FOR TEMPORARY INJUNCTION

Plaintiff's request for a temporary injunction in the above-captioned matter came on for hearing before this Court on January 24, 2011, at which time the Court heard evidence and argument of counsel.

The Court recessed the hearing to allow the parties to gather additional evidence and reconvened the hearing on January 28, 2011.

At the hearing before this Court on January 28, 2011, after considering the evidence and the argument of counsel, the Court finds that Plaintiff's stock certificate is capable of being levied upon and that the Defendant has employed the proper procedure with regard to the levy on Plaintiff's stock certificate.

The Court further finds that Plaintiff, according to his sworn testimony before this Court, has failed to establish standing to initiate or prosecute this action, irreparable harm or that he is without an adequate remedy at law.

337512

EXHIBIT

"H"

For the foregoing reasons, the Court hereby DENIES Plaintiff's request for a temporary injunction.

IT IS SO ORDERED THIS 23ʳᵈ day of January, 2011.

TOM DAVIS, JUDGE
GWINNETT COUNTY SUPERIOR COURT

2

337512

IN THE CIRCUIT COURT, IN AND
FOR SEMINOLE COUNTY, FLORIDA

CASE NO: 10-CA-005146

INSIGHT TECHNOLOGY, INC.,

     Plaintiff,

vs.

DARREN BREWER,

     Defendant.

_____/

## MOTION TO SATISFY JUDGMENT IN WHOLE OR IN PART

COMES NOW, Defendant, DARREN BREWER, by and through his undersigned attorneys, and files this Motion to Satisfy Judgment in Whole or in Part, and in support thereof, states as follows:

1.    This is a Motion to obtain satisfaction of a judgment

2.    Plaintiff, on or about July 18, 2008, obtained a money judgment against Defendant, Darren Brewer, in Case No. 04-A-2940-9 in the Superior Court of Gwinnett County, Georgia in the original amount of approximately $1.3 million ("the Georgia Judgment").

3.    On or about July 28, 2010, Plaintiff domesticated the Georgia judgment, by recording in Seminole County, Florida, a certified copy of the Georgia Judgment, and the clerk of this court issued, on August 2, 2010, a Notice of Recording Foreign Judgment.

4.    The foreign judgment having been properly domesticated in Florida will hereinafter be referred to as the "Florida Judgment."

Motion to Satisfy Judgment
10-CA-005146
Page 1



5.      At all times material to this action, Defendant owned 300 shares of common stock in Insight Technologies, Inc., Plaintiff in this cause, which represented, approximately 20% of Plaintiff's total issued and outstanding common stock.

6.      The Plaintiff levied upon Defendant's 300 shares of stock and conducted a Sheriff's sale of the stock

7.      On February 1, 2011, the Sheriff sold the Insight stock at a public sale, where nobody else attended nor bid, and the Plaintiff Insight Technology, Inc., being the only bidder, purchased the stock for five hundred dollars ($500).

8.      The fair market value at the time of the sale of Defendant's stock was worth in excess of $1 million, and needless to say, grossly more than the $500 sale price.

9.      As evidence of stock value, in 2004, Mr. Gary Aliengena, who then directly or indirectly owned the majority of shares in and was the principal owner of Insight Technology, Inc., testified under oath that the value of all Insight Technology, Inc., stock was approximately $7 million and that the company earned approximately $100,000 each month.

10.     Since the 2004 valuation, Insight Technology, Inc. has grown its revenues and it has increased the value of its stock.

11.     Based upon the above credible valuation by a company insider, Defendant's 300 shares sold at the Georgia sheriff sale was and is valued at a minimum of $1.4 million, which value exceeds the amount of the Florida judgment.

12.     The $500 sheriff sale price was grossly inadequate and disproportionate to the stock's true value of $1.4 million or more.

Motion to Satisfy Judgment
10-CA-005146
Page 2

13.    Defendant is not challenging the conduct of the sale, but Defendant asserts that he is entitled to a credit against the Judgment for the reasonable value of the stock Plaintiff acquired at the sale.

14.    A properly recorded foreign judgment has the same effect as a judgment of a Florida court, and it may be satisfied as if it were a Florida judgment.  Section 55.031), Florida Statutes; *New York State Com'r of Taxation and Finance v. Hayward*, 902 So. 2d 309 (DCA 4th 2005).

15.    It is *hornbook law* in that a judgment debt is reduced by the reasonable value of property at the time of an execution sale. *30 Am Jur. 2d. Executions, Etc. Section 263.*

16.    The public policy behind this general rule is to prevent a creditor from obtaining a double recovery and windfall by obtaining both a judgment and the debtor's property worth the amount of the judgment.  *MMU of New York, Inc v. Grieser*, 999 A.2d 1024 (2010).

17.    Courts in several other states have recognized a court's inherent equitable authority, even in the absence of express statutory authority,  to preclude unjust enrichment by a creditor by obtaining a debtor's property at sheriff sale without also giving due credit to the judgment. See, eg. *Smith v. Lopez*, 304 N.J. Super 26, 32 (Ch Div. 1996); *Morsemere Federal Savings & Loan Assoc. V. Nicolaou*, 503 A. 2d 392 (App. Div 1986).

18.    The same legal principal applies to foreclosure sales in Florida where a debtor is entitled to a credit against any possible deficiency claim for the fair value of the foreclosed property notwithstanding the amount bid at a foreclosure sale.  *MR & F Enerprises v. Citicorp Savings of Florida*, 764 So. 2d 783 (DCA 3d 2000).

19.     Basic principals of equity require a court to properly inquire into all facts and circumstances as to the adequacy of a sale price and to hold an evidentiary hearing to determine the fair value of property sold so the value can be credited against a personal judgment. *Trustees of Central States et al. V. Indico Corporation*, 401 So. 2d 904 (DCA 1st 1981).

20.     Simply stated, where a Plaintiff purchases property at a sale, the outstanding debt must be reduced by the greater of the purchase price or the actual market value of the property. See *Pick v. Gilbert*, 605 So. 2d 182 (Fla. 3d DCA 1992).

21.     It is well settled law in this state that a Plaintiff is entitled to only one recovery. See *Flagship Bank of Orlando v. Bryan*, 384 So. 2d 1323 (Fla. 5th DCA 1980).

22.     In *Bryan*, the Court cited various other Florida cases when it stated:

> Since the appellees unconditionally guaranteed payment of the debt to the bank, clearly the bank could obtain a judgment for the deficiency against each of the guarantors and the debtor. ***However, the indebtedness can be collected only once, and any payment on any of the judgments must be credited to the others.*** (Emphasis Added)

*Flagship Bank of Orlando v. Bryan*, 384 So. 2d 1323 (Fla. 5th DCA 1980).

23.     As there was only one debt owed Plaintiff and as Plaintiff has received personal property of significant value toward the satisfaction of that debt, Defendant is entitled to an evidentiary hearing and a determination of the value of the property and a commensurate offset/credit toward the amount of any judgment entered against them.

24.     Based on the above cited law and evidence, Defendant is entitled to an evidentiary hearing to determine the fair value of the 300 shares of Insight stock sold at the Sheriff's sale and to obtain a credit against the Florida judgment for same amount in order to prevent a double

recovery and windfall to the Plaintiff/Creditor.

WHEREFORE, Defendant requests the court hold an evidentiary hearing to determine the fair and reasonable value of Defendant's 300 shares of common stock in Insight Technology, Inc., sold at the Sheriff sale, and that the court determine the judgment has been satisfied in whole or in part, by the value of the stock, as of the date of the Sheriff's sale.

I HEREBY CERTIFY a true and correct copy of the above and foregoing has been provided by U.S. Mail this _____23nd_____ day of February, 2011, to Insight Technology, Inc., 820 South 300 West, Heber City, UT 84032 and Bruce E. Mitchell, The Mitchell Law Firm, 3390 Peachtree Road NE, Suite 520, Atlanta, GA 30326.

Jonathan B. Alper, Esq.
Florida Bar No. 208681
274 Kipling Court
Heathrow, FL 32746
Telephone: 407-444-0404
Fax: 407-333-2040

Motion to Satisfy Judgment
10-CA-005146
Page 5

**©COPY**

1    THE COURT:  Very well.  And I'll give you

2    the opportunity to do that in front of the jury as

3    well.  Any rebuttle on behalf of the plaintiff?

4    MR. STOKES:  No rebuttle, Your Honor.

5    THE COURT:  All right, plaintiff having no

6    rebuttle I am prepared, I guess, that either side

7    would normally make outside the hearing of the jury

8    understanding that the resting and no rebuttle

9    announcements will be made in front of the jury at

10    some point.

11    MR. WILSON:  Your Honor, on behalf of the

12    defendant Darren Brewer, we would remake at this

13    time our Motions for directed verdict that we made

14    at the close of the plaintiff's case.  We renew

15    those Motions.

16    THE COURT:  My rulings, as made before,

17    stand with regard to all those Motions for directed

18    verdict.  I believe I granted one and denied the

19    balance.

20    MR. WILSON:  Yes, Your Honor.

21    MR. STOKES:  At this time the plaintiff

22    would like to move for a directed verdict on the

23    defendant's counterclaim.

24    As I understood the counterclaim and the

25    testimony that came from the witness stand Mr.



1331

1    I'd urge Your Honor to put this case to the jury and

2    let's see what the jury makes of it.  And I would

3    urge the Court to reserve ruling on this particular

4    Motion until then.  Thank you.

5         THE COURT:  I'm going to recess for a couple

6    of minutes on this one.

7             (Whereupon, a short break ensued.)

8         THE COURT:   I have re-read Monterey

9    versus -- or Leon versus Monterey.  I acknowledge

10    that there is a new quasaican version-type tort in

11    Georgia concerning the deprivation of one's

12    corporate interest.  On the facts that have been

13    presented at this trial I do not believe sufficient

14    evidence has been presented that it would authorize

15    a jury to find that this has happened in this case

16    to Mr. Brewer.  For that reason I grant the directed

17    verdict as to defendant's counterclaim.

18         As I look at the clock it is now 3:30.  I am

19    having the jury brought up.  I'm going to bring the

20    jury in.  I'm going to inquire whether or not this

21    jury would be able to deliberate late into the

22    evening.  What I expect to hear is that there are

23    two jurors that would have difficulty doing so.  I

24    will then request of the jury their status with

25    regard to hearing this case either tomorrow or

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY, FLORIDA

CIVIL ACTION NO: 2010CA005146


INSIGHT TECHNOLOGY, INC.,

          Plaintiff,

vs.


DARREN BREWER,

          Defendant.

_____/

## NOTICE OF FILING

    Plaintiff, Insight Technology hereby gives notice of the filing of the **Defendant's**

**Answers to Plaintiff's First Set of Post-Judgment Interrogatories, and Defendant's**

**Response to Plaintiff's Request to Produce.**

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing document has been
furnished by U.S. Mail Delivery to Jonathan B. Alper, Esq., 274 Kipling Court, Heathrow, FL
32746, Insight Technology, Inc., 820 South 300 West, Heber City, UT, 84032, Bruce E. Mitchell,
Esq., The Mitchell Law Firm, 3390 Peachtree Road NE, Suite 520, Atlanta, GA 30326, Gary D.,
Stokes, Esq., Lamberth, Cifelli, Stokes, Ellis & Nason, P.A., 3343 Peachtree Rd. NE, Suite 550,
Atlanta, GA 30326, this ___24 ℔___ day of January, 2011.


                             Dennis Wells
                             Webb, Wells & Williams, P.A.
                             260 Wekiva Springs Rd., Suite 1070
                             Longwood, Florida 32779



EXHIBIT
"K"

(407) 865-5600
Florida Bar No.: 368504
Attorney for Plaintiff
Insight Technology

IN THE CIRCUIT COURT
IN AND FOR SEMINOLE COUNTY, FLORIDA.

INSIGHT TECHNOLOGY,
      Plaintiff,

vs.                                CASE NO.  2010-CA-5146

DARREN BREWER,
      Defendant.

_____/

## DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST
## SET OF POST-JUDGMENT INTERROGATORIES

1.    Darren Brewer 4025 Bermuda Grove Place, Longwood, Fl. 32779; (407) 878-3112.

2.    Defendant does not have an office nor a business phone.

3.    Defendant objects to this Interrogatory as the question is overly broad and burdensome in terms of time and scope.  The request is not likely to lead to admissible evidence.  The interrogatory is designed solely to annoy and harass Defendant.  More particularly, extreme detail of historical financial accounts up to six years ago is burdensome on Defendant but will not reveal any current assets subject to execution. Without waiving this objection, the Defendant currently maintains three bank accounts at three different financial institutions, described as follows:

    a.    Applied Bank, Wilmington, DE, 4000026379
    b.    AIG Bank, Wilmington, DE, 310144811
    c.    CNL Bank, Orlando, FL 1039924

4.    Defendant has no safe deposit boxes, vaults, safes, or other places of deposit.

5.    Defendant objects to this Interrogatory as the question is overly broad and burdensome, in terms of time and scope.  Specifically, the historical data is not calculated to lead to admissible evidence.  It is unreasonably burdensome and oppressive to require Defendant to attempt to provide monthly historical income, and said historical information is not relevant to prove or disprove the ownership of assets currently owned by Defendant. This request is designed solely to annoy or harass Defendant by requiring Defendant to allocate annual income on a monthly basis from 2004 through present (over six years).

Without waving the objection, Defendant has no personal knowledge of monthly or annual revenue, gross receipts, or income.  To the extent any such information exists, as to a reasonable time period, the answer to the Interrogatory may be derived or ascertained from the federal and state income tax returns and all supporting documents and attachments thereto including, for example, K-1 and W-2 forms. Plaintiff is directed to

examine, audit or inspect those records, and the burden of deriving or ascertaining the answer is substantially the same for Plaintiff as it is for Defendant, and accordingly, pursuant to Rule 1.340(c ) Defendant hereby offers to give Plaintiff a reasonable opportunity to examine those records and to make copies of same.

6.    Assets are as follows:

    a.    Publically traded stocks and bonds: Defendant has maintained an Individual Retirement Account at Prudential Securities.  Defendant has no monthly statements in his possession and/or control.

    b.    Defendant owns membership interests in two limited liability companies

        i.    Extranet Commerce, LLC, a Delaware LLC, 3202 Monarch Pine Drive, Norcross, Georgia 30071.  No shares or certificates have been issued, and therefore, Defendant has no possession, custody, or control of same.

        ii.   Concentrik Technologies, LLC, a Nevis, W.I., limited liability company. No shares or certificates have been issued, and therefore, Defendant has no possession, custody, or control of same.

    c.    Defendant owns the following personal property located at his principal residence at 4025 Bermuda Grove Place, Longwood, Fl. 32779: sofa, two chairs, pressure washer, set of golf clubs, a bicycle, various clothing, gas edger. Defendant estimates the fair market value of the golf clubs is $350, and the value of the pressure washer is $150. Defendant has no knowledge of the value of the other items.

    d.    Defendant is the beneficiary of a qualified personal residence trust which owns the real property located at 3202 Monarch Pine Drive, Norcross, Georgia 30071. Michael W. Dawson, Esq., 1410 Doe Hollow Trace, Lilburn, Georgia is the trustee.

7.    Defendant has $10 on his person

8.    Response as follows:

    a.    Defendant owns no automobiles or other motor vehicles.

    b.    Defendant owns no household appliances worth more than $500 other than those permanently affixed to his residence.

    c.    Defendant owns no machinery or equipment worth more than $500.

9.    Defendant objects to this question so far as it seeks information from over six years ago which information is burdensome in relation to probable discovery of assets subject to

execution. Without waiving the objection, Defendant in the past four years had a financial interest in the following entities. Defendant does not know the amount of compensation received although this information is readily available by inspection of Defendant's annual income tax returns which are being furnished.

    a.    Defendant has owned membership interests in Extranet Commerce, LLC, a Delaware limited liability company, and has received distributions of profit therefrom in past years. The LLC currently has no assets and Defendant no longer receives distributions.

    b.    Defendant owns membership interests in Concentrik Technologies, LLC, located in Nevis, W.I. Other members are Jeanie Yu, who lives with Defendant at 4025 Bermuda Grove Place, Longwood, Florida and Michael Dawson, Esq., 1410 Doe Hollow Trace, Lilburn, Georgia. Defendant has not received any distributions, salary, or other compensation from this LLC.

    c.    None of the above organizations are currently indebted to Defendant.

10.    Defendant does not keep (now or in the past) detailed books and records of his financial transactions.

11.    Insight Technology, Inc. owes Defendant dividends and other distributions during the period prior to 2005 when Defendant owned shares in the company. No other persons are indebted to Defendant.

12.    Defendant objects to this Interrogatory as the question is overly broad and burdensome in terms of its time and scope, and not calculated to lead to admissible evidence on the issues in this case; i.e. to lead to the probable discovery of assets subject to execution, particularly to the extent to question pertains to Defendant's exempt homestead. Without waiving the objection Defendant owns no real property other than his homestead. The homestead property is situated on a lot in Seminole County, Florida, approximately one-half acre in size. The house size is 5,360 finished square feet. Defendant purchased the home in 2010. Information about the house purchase can be derived from closing documents which will be produced. Defendant owns the property free and clear of any mortgage.

13.    None.

Dated this _17th_ day of January, 2011.

DARREN BREWER

STATE OF FLORIDA
COUNTY OF SEMINOLE

    BEFORE ME, personally appeared DARREN BREWER, who first being duly sworn, states under oath that the facts set forth in the above answers to Plaintiff's First Set of Post Judgment Interrogatories are true and correct and that said answers are given under oath.

    SWORN AND SUBSCRIBED TO before me this _17th_ day of January, 2011.

Seal:

JACALYN J. ROYAL
NOTARY PUBLIC
STATE OF FLORIDA
Comm# DD977667
Expires 4/1/2014

Jacalyn J. Royal - Notary Public

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY a copy of the foregoing has been provided by either U.S. Mail, facsimile, or electronic transmission to: Dennis Wells, Esq., Webb, Wells & Williams, P.A., 260 Wekiva Springs Rd., Suite 1070, Longwood, FL 32779, this 20th day of January, 2011.

Jonathan B. Alper, Esquire
274 Kipling Court
Heathrow, FL 32746
(407) 444-0404 / Fax (407) 333-2040
Florida Bar No. 208681
Attorney for Defendant

1. State the name, address, and telephone number of each person furnishing the answers to these interrogatories.

SEE ATTACHED

2. State the full and correct address and telephone numbers for any and all offices where Defendant transacts business.

SEE ATTACHED

3. Please identify each banking, checking, savings, or other financial account (i.e., money market account) maintained since January 1, 2004 in the name of or on behalf of Defendant, whether an individual, corporate, payroll, or escrow account; and for each such account, please state the name and address of the bank or financial institution, the type of account, the account number, the names on the account, the persons authorized to draw on the account, the date the account was opened, the date the account was closed, and the amount of the present balance, if any, or the amount of the last balance before the account was closed.

SEE ATTACHED

4. Please identify any safe deposit boxes, vaults, safes, or other places of deposit and safekeeping in which Defendant has on deposit at this time money, documents, or other items of personal property; and for each place of deposit, please state the name and address of the depository institution and any and all other identities, descriptions, or other ways of identifying said safe deposit boxes, vaults, safes, or other places of deposit and safekeeping, the name and address of each person authorized to enter the deposits.

SEE ATTACHED

5. Please state all sources of income and, in particular, please state by month the revenue, gross receipts, and income derived from any and all sources whatsoever which Defendant or his representatives or agents has received during the period of January 1, 2004, up to and through the present date.

SEE ATTACHED

6. Please identify all assets which Defendant owns or has any interest in, including, but not limited to, stocks, bonds, accounts receivable, personal property, other tangible property, other intangible property, and any other financial obligations held by you; and, in identifying such assets, please state the location of the assets (i.e., address and telephone number), the name, address, and telephone number of the person(s) who has possession, custody, or control of such assets, and the value of the assets or the amount of the obligation owed to you.

SEE ATTACHED

7. Please state the amount of cash which Defendant has in his possession or subject to his control, the location of any and all such cash, and the name and address of the person(s) who possesses or controls any and all such cash.

SEE ATTACHED

8. Please identify each and every piece, item, or unit of equipment and machinery, including, but not limited to, any and all automobiles, household appliances, or motor vehicles owned by Defendant that, at the time Defendant acquired it, had a value greater than $500.00; and for each such piece of equipment or machinery, please state the year, make, model, license number, and identification or serial number of the equipment or machinery, the name and address of the legal owner, the name and address of the registered owner, the date of purchase, the name and address of the person or firm for whom the equipment or machinery was purchased, the purchase price of the equipment or machinery, the name and address of each person who has made payments on the equipment or machinery, the names of any and all holders of liens on the equipment or machinery, and the amount of any and all such liens.

SEE ATTACHED

9.  If Defendant has an ownership or financial interest in any corporation, partnership, limited partnership, sole proprietorship, joint venture, business, or other entity, please state as to each such organization: the name, address, and telephone number of the principal place of business of such organization; Defendant's relationship(s) with any and all such organizations since January 1, 2004; the amount of compensation received from any and all such organizations each month since January 1, 2004; the amount in which such organization is presently indebted to Defendant; the name and address of Defendant's partners or associates in any and all such organizations; and the form of ownership or other financial interest (i.e., stocks, bonds, property, etc.).

SEE ATTACHED

10.  Please state whether Defendant has kept accurate books and records of all of his financial transactions within the last five years, including, but not limited to, canceled checks or check stubs, and if so, state the names and addresses of any and all person(s) who have custody or control of any and all such records; and if such records are unavailable, please provide a detailed explanation regarding their unavailability.

SEE ATTACHED

11.  Please identify any and all persons, whether natural or unnatural, who are indebted to Defendant; and for each such debtor, please provide the name and address of the debtor, the amount owed, the form of the obligation, the date the obligation was incurred, the date the obligation becomes or became due and owing, the condition for payment of the obligation, if any, and the consideration given for the obligation.

SEE ATTACHED

12. Please describe any and all real property owned by Defendant or in which he retains an interest; and for any and all such real property, please provide the address, the size, a description of each building, structure, or other improvement presently existing on the property, the method by which title or interest was acquired, the date of acquisition, the name and address of the seller or other person from whom title was acquired, the date and place the deal was recorded, the present location of the deed or other document of title, the name and address of each owner and the respective ownership interest of such owner, the purchase price, what portion of the purchase price was in cash and what portion was financed, the details of the financing, and the present balance owed on the purchase price.


SEE ATTACHED


13. Please identify each and every person, firm, or business entity which holds any property for Defendant's benefit and, in identifying the same, please provide the name and address of each and every such person, firm, or business entity, a description of the property held for Defendant's benefit, the conditions under which the property is held for Defendant's benefit, and the approximate value of the property.


SEE ATTACHED

IN THE CIRCUIT COURT
IN AND FOR SEMINOLE COUNTY, FLORIDA.

INSIGHT TECHNOLOGY,
      Plaintiff,

vs.                              CASE NO.  2010-CA-5146

DARREN BREWER,
      Defendant.
_____/

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### REQUEST TO PRODUCE

COMES NOW, Defendant, by and through his undersigned attorney, and file this his response to Plaintiff's Request to Produce and states:

1.   Defendant objects to this request as overly broad and burdensome in terms of the its time and scope.  This request is not calculated to lead to admissible evidence but rather is designed solely to annoy and harass the Defendant.  Without waiving the objection, Defendant states that he has no such documents responsive to this request in his dominion, custody, or control.

2.   Defendant objects to this request as overly broad and burdensome in terms of the its time and scope.  This request is not calculated to lead to admissible evidence but rather is designed solely to annoy and harass the Defendant.  Without waiving the objection, Defendant will provide for inspection or copying at a mutually convenient time and place the following: copies of operating agreements for Extranet Commerce, LLC and closing documents related to his homestead property.

3.   Defendant has no such documents responsive to this request in his dominion, custody, or control.

4.   Defendant objects to this request as overly broad and burdensome in terms of the its time and scope.  This request is not calculated to lead to admissible evidence but rather is designed solely to annoy and harass the Defendant  Without waiving the objection, Defendant neither owns nor leases any motor vehicles and has no such documents in his dominion, custody, or control.

5.   Defendant objects to this request as overly broad and burdensome in terms of the its time and scope.  This request is not calculated to lead to admissible evidence but rather is designed solely to annoy and harass the Defendant,  Without waving the objection, Defendant neither owns nor leases any boats or aircraft and has no such documents in his dominion, custody, or control.

6.    Defendant has no such documents responsive to this request in his dominion, custody, or control.

7.    Defendant objects to this request as overly broad and burdensome in terms of the its time and scope. This request is not calculated to lead to admissible evidence but rather is designed solely to annoy and harass the Defendant. Without waiving the objection, Defendant has no such documents in his dominion, custody, or control, and Defendant has submitted no such personal financial statements.

8.    Defendant owns no life insurance policies, and accordingly has no documentation in his dominion, custody, or control responsive to this request.

9.    Defendant objects to this request as overly broad and burdensome in terms of the its time and scope. This request is not calculated to lead to admissible evidence but rather is designed solely to annoy and harass the Defendant Without waiving the objection, Defendant has no such documents in his dominion, custody, or control.

10.   Defendant objects to this request as overly broad and burdensome in terms of the its time and scope. This request is not calculated to lead to admissible evidence and includes no reasonable limitation of dollar amount or time, but rather is designed solely to annoy and harass the Defendant

11.   Defendant has no such documents responsive to this request in his dominion, custody, or control.

12.   Defendant objects to this request as overly broad in time and scope, unreasonably burdensome in relation to probable discovery of assets subject to execution. Without waiving the objection, Defendant has no such documents responsive to this request in his dominion, custody, or control.

13.   Defendant objects to this request as overly broad and burdensome in terms of the its time and scope. This request is not calculated to lead to admissible evidence but rather is designed solely to annoy and harass the Defendant Without waiving the objection, Defendant has no such documents responsive to this request in his dominion, custody, or control.

14.   Defendant objects to this request as overly broad and burdensome in terms of the its time and scope. This request is not calculated to lead to admissible evidence but rather is designed solely to annoy and harass the Defendant, particularly to the extent it requests documents prior to January 2007. Without waiving the objection, Defendant has no documents in his dominion, custody, or control. Defendant believes that some of the documents requested are in the possession of his CPA, Susan Barnes, Flowery Branch, Georgia.

15.   Defendant objects to this request as overly broad and burdensome in terms of the its time and scope. This request is not calculated to lead to admissible evidence but rather is

designed solely to annoy and harass the Defendant. Without waiving the objection, Defendant has no such documents responsive to this request in his dominion, custody, or control.

16.    Defendant objects to this request as overly broad and burdensome in terms of the its time and scope. This request is not calculated to lead to admissible evidence but rather is designed solely to annoy and harass the Defendant, particularly as it relates to documents dated prior to January 2007. Without waiving the objection, Defendant states that he has no such documents responsive to this request in his dominion, custody, or control.

17.    Defendant objects to this request as overly broad and burdensome in terms of the its time and scope. This request is not calculated to lead to admissible evidence but rather is designed solely to annoy and harass the Defendant, particularly as it relates to "all memoranda and correspondence." Without waiving the objection, Defendant will provide for inspection or copying at a mutually convenient time and place the following: closing package received from title company after the purchase of his homestead real property situated at 4025 Bermuda Grove Place, Longwood, Florida.

18.    Defendant has no such documents responsive to this request in his dominion, custody, or control.

19.    Defendant has no such documents responsive to this request in his dominion, custody, or control.

20.    Defendant objects to this request as overly broad in time and scope, unreasonably burdensome in relation to probable discovery of assets subject to execution particularly as it relates to documents dated prior to January 2007. Without waiving the objection Defendant states that he has no such documents responsive to this request in his dominion, custody, or control.

I HEREBY CERTIFY a copy of the foregoing has been provided by either U.S. Mail, facsimile, or electronic transmission to: Dennis Wells, Esq., Webb, Wells & Williams, P.A., 260 Wekiva Springs Rd., Suite 1070, Longwood, FL 32779, this _20th_ day of January, 2011.

Jonathan B. Alper, Esquire
274 Kipling Court
Heathrow, FL 32746
(407) 444-0404 / Fax (407) 333-2040
Florida Bar No. 208681
Attorney for Defendant

Reviewed & Approved

Darren Brewer